## SMITH v. MASON, ASSIGNEE.

1. Where an assignee in bankruptcy claims a fund as the property of his bankrupt, which some time before the bankruptcy a firm of which the bankrupt was a member transferred to a third party, and which the transferee now claims adversely to the assignee, the proceedings in the District Court should not be summary and under the first section of the Bankrupt Act, but formal and under the second clause of the third section.
2. An appeal from a proceeding in bankruptcy disposing, under the first section, of such a claim, lies (other requisites allowing it) from the Supreme Court of the District of Columbia to this court.

APPEAL from the Supreme Court of the District of Columbia; the case being this:

The Bankrupt Act* enacts:

"SECTION 1. That the several District Courts of the United States be courts of bankruptcy, and they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy, and they are hereby authorized to hear and adjudicate upon the same *according to the provisions of this act*. . . .

"The said courts shall be always open for the transaction of business under this act, and the powers and jurisdiction hereby granted and conferred shall be exercised as well in vacation as in term time, and a judge sitting at chambers shall have the same powers and jurisdiction, including the power of keeping order and of punishing any contempt of his authority as when sitting in court.

"And the jurisdiction hereby conferred shall extend to all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; *to the collection of all the assets of the bankrupt;* to the ascertainment and liquidation of the liens and other specific claims thereon; *to the adjustment of the various priorities and conflicting interests of all parties, and to the marshalling and disposition of the different funds and assets so as to secure the rights of all parties and due distribution of the assets among all the creditors;*

---

* 14 Stat. at Large, 517.

*and to all acts, matters, and things to be done under and in virtue
of the bankruptcy, until the final distribution and settlement of the
estate of the bankrupt and the close of the proceedings in bankruptcy.*
The said courts shall have full authority to compel obedience to
all orders and decrees passed by them in bankruptcy, by pro-
cess of contempt and other remedial process, to the same extent
that the Circuit Courts now have in any suit pending therein in
equity."

The *second* section, in its first clause, gives to the *Circuit*
Courts "a general superintendence and jurisdiction of all
cases and questions arising under this act; and, except
when *special provision is otherwise made*," authorizes *them*,
upon bill, petition, or other proper process of any party
aggrieved, to hear and determine the case as in a court of
equity.

By its third clause the act enacts thus:

"Said Circuit Courts shall also have concurrent jurisdiction
with the District Courts of the same district of all suits at law
or in equity which may or shall be brought by the assignee in
bankruptcy against any person claiming an adverse interest, or
by such person against such assignee, touching any property or
rights of property of said bankrupt transferable to or vested in
such assignee."

The eighth section of the act gives appeals and writs of
error from the District to the Circuit Courts, when the debt
or damage claimed amounts to more than $500. The sec-
tion proceeds:

"And any supposed creditor, whose claim is wholly or in part
rejected, or an assignee who is dissatisfied with the allowance
of a claim, may appeal from the decision of the District Court
to the Circuit Court from the same district."

The ninth section enacts:

"That in cases arising under this act no appeal on writ of
error shall be allowed in any case from the Circuit Courts to
the Supreme Court of the United States, unless the matter in
dispute in such case shall exceed $2000."

The forty-ninth section enacts:

"That all the jurisdiction, power, and authority conferred upon and vested in the District Courts of the United States by this act in cases in bankruptcy are hereby conferred upon and vested in the Supreme Court of the District of Columbia . . . when the bankrupt resides in the District of Columbia."

So far as to provisions of what is called the Bankrupt Act.

The Supreme Court of the District of Columbia, referred to in the section last quoted, and from which court this appeal came, was reorganized by an act of March 3d, 1863.* The act gives it a general jurisdiction in law and equity. It is made to consist of four judges. Any one of them may hold the District Court of the United States for the District of Columbia, in the same manner and with the same powers and jurisdiction possessed and exercised by other District Courts of the United States.

In this state of statutory law Frederick P. Sawyer, the bankrupt in this case, was the senior member of the firm of Sawyer, Risher & Hall, of Washington, D. C., who held a claim against the United States, which they had put in the hands of George Taylor, for collection. On the 20th January, 1867, and while the claim was pending, the firm assigned it to Biddle & Co., of New York, by an order on Taylor to pay the proceeds over to them when collected, which order was accepted by Taylor. Biddle & Co. assigned the order in turn, on the next day, to one Smith. Taylor collected about $1000 on the claim, which he remitted to Smith, according to the arrangement. Some time after this payment, and before any further collection was made, Sawyer went into bankruptcy (one Mason being appointed his assignee), and the firm of Sawyer, Risher & Hall was dissolved, Risher and Hall closing the business of the firm, as remaining partners. After this date Taylor, by consent of all parties, received a further sum of $4744.19, and there was an uncollected draft yet to be paid to him.

At the time of these collections the accounts between the

----

* 12 Stat. at Large, 762.

bankrupt partner and the remaining ones were unsettled, and the partnership debts were unliquidated. The assignee, therefore, filed a bill for an account, but the remaining partners had not answered. At this stage of the proceedings Mason, the assignee of Sawyer, on the 13th of October, 1868, presented a petition to one of the judges of the Supreme Court of the District of Columbia, sitting in bankruptcy, setting forth that he had filed his bill against Risher & Hall, the partners, carrying on the business of Sawyer, Risher & Hall, for the settlement of the partnership accounts; that Taylor had collected the sum of $4744.19, above mentioned, and that other funds would come into his hands for Sawyer, Risher & Hall; that prior to the bankruptcy of Sawyer the firm made the assignment (already mentioned) to Biddle & Co., as collateral security for the payment of a debt to the said firm, which debt had been paid; and that Biddle & Co. had assigned its claim to Smith.

Mason accordingly prayed an injunction on Taylor against his payment of the money pending his suit against Sawyer, Risher & Hall. This application for an injunction was in truth apparently made at Taylor's instance, in order that in any payments which he made of money that he received, he might act under an order of court. He did not appear, and the injunction was granted. Mason then, on the 7th of April, 1869, filed a petition against Smith, asking for an order on him to show cause why the money should not be decreed to him, Mason, as assignee. Smith appeared and set up his claim to the money.

On the 10th of April, 1869, Risher & Hall, the remaining partners, now intervened, and also claimed the money, on the ground that the order on Taylor was a mere hypothecation of the claim, and that Biddle & Co. had been fully paid.

The court thereupon went into an examination of the accounts between Sawyer, Risher & Hall, and Biddle & Co., and (Biddle & Co. not being present, and having had no notice or order served upon them) decided that the debt originally due to Biddle & Co. had been satisfied; and that

the funds in the hands of Taylor should be paid over to Mason, the assignee of Sawyer.

From this decree an appeal was taken by Smith. The court in banc reversed the decision of the court in bankruptcy, dissolved the injunction, and ordered the money to be paid over to Risher & Hall, the solvent and surviving partners, thus deciding the right of Biddle & Co. and Smith without notice to Biddle & Co., and in favor of the surviving partners.

From this decree Smith took the present appeal. Counsel for the appellee appeared generally. The record, which was not a very full one, did not perhaps show very well notice of the appeal, but it showed clearly enough that the appeal had been duly claimed, and that the appellant filed his appeal bond in open court, and that it was duly approved by the chief justice of the Supreme Court of the District, who presided at the hearing when the final decree was entered in the case.

*Messrs. Moore and Bright, for the appellant:*

If any jurisdiction existed under the first section of the Bankrupt Act, and in a summary way, all parties to be affected should certainly have had notice. The court, without notice to Biddle & Co., and in their absence, went into the examination of their accounts and decided that their claim had been paid and discharged, and that they were bound to return the order on and acceptance of Taylor to the firm of Sawyer, Risher & Hall.

But the case was not one for summary jurisdiction under the first section at all. The case was plainly one for a proceeding in equity under the third clause of the second section, when all parties in interest would have been regularly brought in and accounts could have been regularly taken.

*Mr. G. W. Paschall, contra:*

No appeal lies in a case from the general term of the Supreme Court of the District of Columbia to this court in a strictly bankrupt proceeding. If it be conceded that the

ninth section of the Bankrupt Act, by a negative pregnant, allows appeals from the Circuit Court to this court in all cases where the matter in controversy exceeds $1000, it does not follow that such appeal lies from the Supreme Court of the District of Columbia, much less that such power has been exercised in a manner to give this court jurisdiction.

There is, in fact, no appeal order by the court; there is no appeal bond, such as is required by the statute; there is no notice of appeal, and no evidence that the appeal was taken in term, or ever, in fact, taken at all. These are all jurisdictional facts.

But conceding the jurisdiction, we insist that, under the first and second sections of the Bankrupt Act, and the broad principles of *Ex parte Christy*,* the court, in the exercise of the powers given, had the right to do precisely what was done in this case; that is, to determine the right of the claimants to a fund in which the bankrupt estate had an interest. The suit was brought originally by the assignee against the partners of the bankrupt for account. This fund was in the District, in the hands of the attorney of this firm, and the assignee brought the suit to enjoin the payment, either to the non-accounting partners or to Smith, who was understood to have set up some claim to the fund. Smith was properly cited to assert his claim to the fund. At this point the surviving partners intervened and set up their rights. The bankrupt court, in the exercise of its legitimate powers, acquired a summary equitable jurisdiction over the subject-matter and the parties; and, having become thus possessed of the cause, it might fully proceed to adjudicate the right.

Smith, as also Risher and Hall, were claiming an interest in the bankrupt's assets, and no disposition could be made of this fund until the rights of these claimants should be settled. The jurisdiction of the District Court expressly extends " to the collection of all assets of the bankrupt;" " to the marshalling and disposition of the different funds and

---

* 3 Howard, 321.

assets among all the creditors; and to all acts, matters, and things to be done under and in virtue of the bankruptcy, until the final distribution and settlement of the bankrupt's estate, and the close of the proceedings in bankruptcy." The Circuit and District Courts have given an enlarged interpretation to this section.*

Mr. Justice CLIFFORD delivered the opinion of the court.

Jurisdiction, power, and authority in cases in bankruptcy, when the bankrupt resides in this District, are conferred upon, and vested in, the Supreme Court of the District, to the same extent and subject to the same rules, regulations, and restrictions as are enacted and prescribed in respect to the jurisdiction, power, and authority of the District Courts of the United States, where the bankrupt resides in any one of the judicial districts within the several States.†

By the terms of the act establishing the Supreme Court of the District the court consists of four justices, any three of whom may hold a general term, and any one of them may hold a Circuit Court or special term for the purposes and under the conditions therein prescribed, or may hold a District Court of the United States, in the same manner and with the same powers and jurisdiction as are possessed and exercised by the Federal District Courts within the several States.‡

Enough appears in the record to show that one Frederick P. Sawyer, of the firm of Sawyer, Risher & Hall, was adjudged bankrupt by the Supreme Court of this District sitting in bankruptcy, and that George Mason, the appellee in this case, was appointed assignee of his estate by decree of the bankrupt court. He commenced the proceeding in this case by the petition exhibited in the transcript, in which he represents that George Taylor, as agent of that firm, had collected from the United States the sum of four thousand seven hundred and forty-four dollars and nineteen cents for

---

* See 2 Brightly's Digest, p. 74, notes *a*, *b*, *c*.
† 14 Stat. at Large, 541.                    ‡ 12 Id. 763.

the firm, and that other funds due to the firm, it was expected, would soon come into his hands; that Risher & Hall, the other two members of the firm prior to the bankruptcy of the senior partner, made an assignment of the claim, from which that amount was realized, to George E. Biddle & Co., as collateral security for the payment of a certain indebtedness of their firm to the said assignees, which indebtedness the petitioner believes has been paid; that the assignees of the claim afterwards made an assignment of their interest in the same to James R. Smith, as collateral security for their indebtedness to him, which, as the petitioner believes, has also been paid: wherefore he prayed that the said George Taylor might be restrained from paying out said money, or any other money which might come into his hands belonging to the same firm, pending the petition, and that the respondent might be required to give bond for the safe-keeping of the money and for its production in court when ordered.

Such an order was issued, and the party holding the money was enjoined and required to give bond as prayed. Subsequently the petitioner presented another petition to the same court, in which he represented that James R. Smith also claimed an interest in the fund in question, and prayed that an order might be made requiring him to show cause on a day therein named why the fund should not be paid to the petitioner. Smith appeared and filed an answer to the rule, to the effect following: (1.) That the court had no jurisdiction to proceed against him in that mode. (2.) That the money enjoined came to him by regular assignment for a valuable consideration before the senior partner of the firm was adjudged bankrupt, and that he was, and is, the *bonâ fide* owner of the claim. (3.) That neither the assignee of the bankrupt's estate nor his creditors have any right to any part of said funds.

Before the hearing the other partners of the firm, to wit, Risher and Hall, intervened, and alleged that the money enjoined rightfully belonged to them and not to the respondent in the rule, because the assignment of the claim, as they

represented, was made by the senior partner of their firm merely as a security to the said assignees, to be applied by them to the payment of the debt due by their firm to those assignees; that it was expressly understood that if the assignors paid the debt before the claim was collected from the United States the claim should revert to them, the assignors; that they paid their entire debt to those parties before the claim was allowed at the Treasury Department, and that they, as the representatives of the firm since the bankruptcy of the senior partner, are entitled to the money: wherefore they pray that an order may be passed directing the depositary to pay the same to them, or, if it be paid to the said assignees, that it be so paid to their use.

Evidence was introduced by the intervenors tending to show that the indebtedness of the original owners of the claim to the assignees of the same had been paid, and that the respondent in the rule held the claim merely as collateral security for his assignors. On the other hand the respondent in the rule was examined, and he testified that he obtained the assignment of the claim in good faith and for value, without notice that his assignors held it subject to any conditions, or that it was not their property in case the indebtedness of their assignors was discharged before the claim was collected. He produced the assignment duly executed by the original owners, directing the depositary to pay the amount to the assignees when collected at the proper department, and also introduced the deposition of the senior partner of the firm to which the claim was assigned, and he deposed that his firm transferred and assigned the same to the respondent in the rule with the knowledge and consent of the original owners; that they, the assignees, took the order or draft at its date in the regular course of business, and that they assigned the same for value to the respondent, and that the accounts of the original owners with his firm have never been settled, but that they are still largely indebted to his firm. Hearing was had, but the court was of the opinion that the respondent took the order or draft

merely as collateral security; that he was not a *bonâ fide* purchaser of the same; that he was to credit the proceeds when collected to his assignors, and that they were to credit the same to the original owners.

Pursuant to that finding the court entered a decretal order that the depositary of the claim should pay the net balance in his hands to the assignee in bankruptcy for the benefit of the creditors of the original owners. Immediate application was made by the respondent for an appeal to the general term, which was granted on the following day. Due appearance was entered not only by the appellant but also by the intervenors as well as by the assignee in bankruptcy, and they were again heard before all the justices of the court; and the court being of opinion that there was error in the decree and that the intervenors, as the solvent partners of their firm, were entitled to the money, entered a decree dissolving the injunction, and directing the depositary of the money to pay the net balance in his hands to those parties as the survivors of the original owners of the claim: whereupon the respondent appealed to this court.

Instituted as the proceeding was to restrain the depositary of the claim from paying out the money which he had collected, or any which might thereafter come into his hands, it is quite clear that the alleged purpose of the petitioner was accomplished when the injunction was granted as prayed in the petition, as the party respondent in that proceeding never filed any answer and testified in the case that the order restraining him from paying out the money was procured by him so that he might not be required to act without the directions of the court. Had the matters terminated there the appellant would not have had any right of appeal to this court, as he was an utter stranger to the proceedings. He was not made a party to the petition nor was he served with process, nor did he voluntarily appear. Whatever the purpose of the petition was, or by whomsoever the injunction was procured, the proceeding was commenced and terminated without the knowledge of the appellant, and before any steps were taken by the petitioner or any one else to

connect the appellant with the litigation. More than a year
and a half before that petition was filed the original owners
of the claim had assigned and transferred the same to the
assignors of the appellant, and had directed, in writing, the
depositary in whose hands they had placed it for collection
to pay the same when collected to their said transferees, and
the record shows that the depositary of the claim accepted
the draft or order at the time and agreed to pay the same as
directed whenever the same should come into his hands, less
expenses and commissions. None of these facts are contra-
dicted, and the appellant proved that the assignees of the
claim, within a few days after receiving the same, assigned
and transferred the same to him for full value in the usual
course of business.

Beyond all doubt, therefore, the case is one where the appel-
lant claimed absolute title to and dominion over the matter
in controversy between him and the assignee of the bank-
rupt's estate. Absolute title to the matter in controversy is
also claimed by the assignee in bankruptcy, as appears by
his second petition, in which he prayed that the appellant
might be summoned to show cause why the fund should not
be paid to him as such assignee.

Suggestion may be made that the decree gives the fund to
the intervenors, but the court will at present re-examine the
case as between the parties first made in the second petition,
before the solvent members of the firm to which the claim
originally belonged were permitted to intervene in the liti-
gation, as it is quite obvious that the whole proceeding sub-
sequent to their intervention is irregular, and that the decree
must be reversed if it be held that the bankrupt court had
no jurisdiction to proceed and determine the right of prop-
erty as between the assignee and the transferee of the same
for value in that mode of proceeding.

Neither the depositary of the fund nor the appellant
claimed anything from the estate of the bankrupt, and the
appellant contends that the bankrupt court cannot take juris-
diction in such a case by a rule to show cause, served on a
stranger to come in and answer in support of his title or

claim to such a fund or to any other property over which he claims absolute dominion.

Power and jurisdiction in all matters and proceedings in bankruptcy are conferred upon the District Courts, and those courts as courts of bankruptcy are authorized to hear and adjudicate upon the same according to the provisions of the Bankrupt Act. Examined separately the clause of the first section of the act, which provides that the powers and jurisdiction therein granted and conferred may be exercised as well in vacation as in term time, and that a judge sitting in chambers shall have the same powers and jurisdiction as when sitting in court, would seem to afford some support to the views of the assignee in this case, that all the powers and jurisdiction of the District Courts, when sitting as courts in bankruptcy, may be exercised in a summary way without process, as by a rule to show cause, as in a motion to set aside a verdict in an action at common law, or in a collateral proceeding in a suit in equity. Most matters and proceedings in bankruptcy may doubtless be heard and adjudicated by the District Court in that way, but that general clause in the first section, which is referred to as supporting the unlimited scope of that power and jurisdiction, must be considered in connection with all the other provisions of the Bankrupt Act, as is expressly required by the preceding clause of the same section, in which it is enacted that the District Courts shall hear and adjudicate upon all matters and proceedings in bankruptcy according to the provisions of the Bankrupt Act. Superadded to that general clause, and as an exposition of the same, is another and more important clause, in which is given a specific enumeration of the cases and controversies to which that general jurisdiction extends, and it is plain that the enumeration does not include "suits at law or in equity which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee touching any property or rights of property of said bankrupt transferable to or vested in such assignee." On the contrary, the third clause of the second section expressly enacts that Circuit

Courts shall have concurrent jurisdiction with the District Courts of all such suits at law or in equity, provided the suit at law or bill in equity shall be brought within two years from the time the cause of action accrued.*

Controversies, in order that they may be cognizable either in the Circuit or District Court under that act, must have respect to some property or rights of property of the bankrupt transferable to, or vested in, such assignee; and the suit, whether it be a suit at law or in equity, must be in the name of one of the two parties described in that clause and against the other, as appears by the express words of the provision. Such a suit, whether at law or in equity, may be commenced either in the District or Circuit Court, at the election of the party suing, and if in the former it is clear that the case, when it has proceeded to final judgment or decree, may be removed into the Circuit Court for re-examination by writ of error, if it was an action at law, or by appeal if it was a suit in equity, provided the debt or damages claimed amount to more than five hundred dollars and the writ of error is seasonably sued out, or the appeal is claimed and the required notices are given within ten days from the rendition of the judgment or decree.† None of those regulations, however, apply to petitions for revision under the first clause of the second section, nor does the Bankrupt Act fix any precise limitation to the right of a party aggrieved by the ruling, decision, or decree of the District Court to file a petition for that purpose in the Circuit Court. Power to revise all cases and questions which arise in the District Courts, in such a proceeding, "except when special provision is otherwise made," is conferred upon the Circuit Courts by the first clause of the same section, but the court is of the opinion that the power conferred by that clause does not extend to any case where special provision for the revision of the case is otherwise made, as where it is provided that an appeal will lie from the District Court to the Circuit Court, or where a writ of error will lie from

---

* 14 Stat. at Large, 518; Morgan v. Thornhill, 11 Wallace, 65.
† Knight v. Cheney, 5 National Bankrupt Register, 309.

the Circuit Court to the District Court in the manner provided in the laws of Congress allowing appeals and writs of error.*

Special provision is made for the revision in the Circuit Court of controversies like the one exhibited in this record, and the court is of the opinion that such causes cannot be commenced by a petition for a rule to show cause, as in this case, nor be determined in a summary way by the District Court sitting in bankruptcy, without due process of law.† Cases of the kind before the court fall directly within the third clause of the section under consideration, and must, in the judgment of the court, be determined by a suit in equity or an action at law, as the case may be; and where an action at law is the proper remedy the parties are entitled to a trial by jury if the value in controversy shall exceed twenty dollars. Concurrent jurisdiction in such cases, it must be conceded, is vested in the Circuit and District Courts, and it is equally clear that either party, where the proceeding is correct, may remove the cause, in a proper case, when it has proceeded to final judgment or decree, into the Supreme Court for re-examination, as provided in other causes outside of the Bankrupt Act.

Possession and control of the claim had been surrendered by the original owners long before the senior partner of the firm was adjudged bankrupt, and the depositary of the same had duly accepted the order or draft transferring the proceeds of the same to the assignors of the appellant, showing that the assignee in bankruptcy had neither the possession nor the right of possession to the same at the time the petition for the rule was filed. Independent of the injunction, which was granted without notice to the appellant, he was apparently entitled, and if the evidence he introduced is believed, he was in fact entitled, to demand and to receive the whole fund as his own property. Suffice it to say, without expressing any opinion as to the weight of the evidence, the appellant claimed the fund as his own property, and if his

---

* Knight *v.* Cheney, 5 National Bankrupt Register, 310.

† Ex parte Bacon, 2 Molloy, 441.

claim is just and legal, the possession of the depositary was his possession, and if the assignee in bankruptcy would divest him of the possession and control of the fund he must do it by a suit at law or in equity, as provided in the third clause of the second section of the Bankrupt Act. Equity would certainly have jurisdiction in such a case, as in that mode of proceeding all the parties could be brought before the court. Extended remarks in respect to the decree in the case appears to be unnecessary, as it is as clear as any thing in legal decision can be that the intervenors could no claim to divest the appellant of his interest in the funds b, becoming parties to a rule like the one before the court, no in any other manner than by due process of law.

Objection is also made that the appeal is irregular, as having been prosecuted from the Supreme Court of the District, but the regulations of the forty-ninth section of the act afford a satisfactory answer to that objection, which is all that need be said upon the subject. Want of notice of the appeal comes too late after a general appearance, but the record shows that the appeal was duly claimed and that the appellant filed his appeal bond in open court and that the same was duly approved by the chief justice who presided at the hearing when the final decree was entered in the cause.

Strangers to the proceedings in bankruptcy, not served with process, and who have not voluntarily appeared and become parties to such a litigation, cannot be compelled to come into court under a petition for a rule to show cause, as in this case; nor is the exercise of such a jurisdiction necessary, as the third clause of the second section of the Bankrupt Act affords the assignee a convenient, constitutional, and sufficient remedy to contest every adverse claim made by any person to any property or rights of property transferable to, or vested in, such assignee.

DECREE REVERSED and cause remanded for further proceedings,

IN CONFORMITY TO THE OPINION OF THIS COURT.