PEOPLE *ex rel.* JENNYS V. BRENNAN.

*Sheriff — liability of for moneys collected on process.  Proceedings to enforce pay-
ment.  Jurisdiction — consent confers.  Bankruptcy.*

A sheriff collected moneys upon an execution against M. on a judgment in
favor of plaintiff.  Bankruptcy proceedings were instituted against M. and
the sheriff enjoined thereon from paying over the money.  In May, 1872, the
sheriff was ordered by the Supreme Court to pay the money to plaintiff, and
the order was affirmed at general term.  In the bankruptcy court, where, by
consent of plaintiff's counsel, who appeared, a reference was ordered to
determine the claims of plaintiff and the assignee in bankruptcy to the money,
the referee reported in favor of the assignee, and, by order of the bank-
ruptcy court, the money was paid to the assignee.  Subsequently, proceed-
ings were instituted in the Supreme Court to compel the sheriff to pay to
plaintiff as directed by the order in May, 1872.
*Held,* (1) that in such proceedings the sheriff was not concluded by the order
of May, 1872, but was entitled to show the proceedings had in the bank-
ruptcy court in justification of his non-compliance with that order, and (2)
that plaintiff having appeared in the bankrupt proceedings and consented to
the reference, although the reference was not the proper mode of deter-
mining the claims to the money, was concluded by the decision of the bank-
ruptcy court, and the sheriff was not liable to plaintiff for the moneys paid to
the assignee.

APPEAL by Matthew T. Brennan, late sheriff of the county of
New York, from an order at special term directing his pun-
ishment for contempt.

The relator, Marianna Jennys, on or about the 11th day of
July, 1871, recovered a judgment in this court against her hus-
band, John L. R. Jennys.  On the 28th day of the same month
an execution against property was issued upon the judgment to the
appellant as sheriff of the county of New York, upon which he col-
lected the sum of $1,277.90, besides his fees and expenses.  Before
the moneys so collected were paid over proceedings were taken in
the United States District Court for the southern district of New
York, under the bankrupt law, for the purpose of having the judg-
ment debtor and his partner adjudged bankrupts, and for a distri-
bution of their property among their creditors.  While those
proceedings were pending, and on the 10th day of May, 1872, an
order was made on the application of the relator, and after hearing
the appellant, ordering him to pay over to her the moneys collected

by him on the execution. From that order he appealed to the general term, where it was affirmed on the 4th day of June, 1872. A further application was made to punish the appellant for contempt for not paying over the money as required and directed by the order of the 10th of May, 1872, and that resulted on the 5th of October, 1874, in an order imposing a fine upon him amounting to the sum of $1,483.05, and $260 costs and expenses of the proceedings, and directing his commitment to prison until he should pay the same. Upon the hearing on which the last order was made it was shown that on the same day the order of the 10th of May, 1872, was served upon the appellant, and near the same time an injunction was also served upon him, issuing out of the United States District Court, enjoining and prohibiting the payment of such moneys to the relator. It was further made to appear that a petition was presented to that court by the assignee, who had been appointed in the bankruptcy proceedings, for a disposition of the conflicting claims made to the moneys in the hands of the appellant under the execution. On the hearing of that petition the relator, the appellant and the assignee appeared by their respective counsel, and an order by consent was made on the 10th of February, 1872, referring the claim made by the assignee to the money to one of the registers of the court to take proof and report it with his opinion to the court. At the outset of the hearing before the register the relator's counsel objected that the proceeding by petition was improper, and that her right to the money could only be properly contested by a bill in equity. After that both the claiming parties proceeded with the hearing, and gave evidence before the register. He afterward returned the evidence to the court with his opinion in favor of the assignee, and the United States District Court, after hearing the counsel for the relator and the assignee, and on notice to the appellant, on the 1st day of March, 1873, ordered him to pay the money over to the assignee, which he did on the 10th day of that month.

On the 20th day of June, 1873, an attachment was ordered to issue against the appellant, to bring him before the court for punishment for disobeying the order of the 10th of May, 1872, and in the proceeding following his arrest on the attachment, the order was made imposing a fine upon him for such disobedience. From the last order this appeal was taken.

*J. Sterling Smith* and *A. J. Vanderpoel,* for appellant.

*O. P. Buel,* for respondent. The order of May 10 is not open to impeachment. *People* v. *Sturtevant,* 9 N. Y. 263, 266; *Pitt* v. *Davison,* 37 id. 243; *People* v. *Johnson,* 38 id. 63; *Woodgate* v. *Fleet,* 44 N. Y. 13, 14; *Davis* v. *Mayor of New York,* 1 Duer, 451; *Erie Railway Co.* v. *Ramsey,* 45 N. Y. 637. The bankruptcy court was without jurisdiction to decide as to claims to the moneys. *Marshall* v. *Knox,* 16 Wall. 551; *Smith* v. *Mason,* 14 id. 419. Bump on Bankruptcy (7th ed.), 201; *Knowlton* v. *Prov. & N. Y. I. S. Co.,* 53 N. Y. 77; *People* v. *White,* 24 Wend. 520; *Buffalo, etc., R. R. Co.* v. *Supervisors, etc.,* 48 N. Y. 99; *Bloom* v. *Burdick,* 1 Hill, 130; *Norton* v. *Cook,* 9 Conn. 314; *Kerr* v. *Kerr,* 41 N. Y. 275; *Blin* v. *Campbell,* 14 Johns. 432; *Bigelow* v. *Stearns,* 19 id. 41; *Burckle* v. *Eckhart,* 3 N. Y. 137; *Clapp* v. *Graves,* 26 id. 418; *Attorney-General* v. *Hotham,* 1 Turn. & Ruis. 219.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

DANIELS, J. The respondent's counsel insists that this court is concluded by the order made on the 10th of May, 1872, directing the appellant, the sheriff, to pay her the money he had previously collected on the execution in her favor, from questioning the propriety of that discretion. But that is clearly a misapprehension of the condition of the case. For the order which directed the attachment to be issued so far modified the order making that direction, as to allow the parties to read upon the hearing which should be afterward had, the papers used by the respective parties on the hearing of a preceding order to show cause, and from the circumstance that the proceedings in the United States District Court were produced and proved on the part of the sheriff, it may be inferred that they were within the scope of the modification so made. This conclusion is further warranted by the fact that no objection that they were not within it seems to have been taken by the relator to that course of proceedings, and the opinion of the learned justice by whose direction the order for the attachment was entered, very decidedly confirms that view of the liberty secured by means of it. From that it appears that the intention existed to allow the sheriff to show that the relator had consented to the reference made of the controversy concerning the title to the money collected under the

execution by the United States District Court, by way of an answer to the proceedings instituted to punish him for disobeying the order directing him to pay the money to her; and on the final hearing of that proceeding that fact, as well as the hearing and final order following it, were shown for the purpose of protecting him from the order afterward made imposing a fine upon him for his disobedience of the order directing the payment to the relator. These facts were entirely proper to be shown on the part of the sheriff for another reason ; for although the reference in the United States District Court was ordered before the order was made directing him to pay the money to the relator, the hearing itself was chiefly if not entirely afterward, and the final order under which the money was paid to the assignee was not made until the 1st day of March, 1873. The effect of the hearing and of the order made upon its determination could not be considered, and were not involved in the order of the 10th of May, 1872, directing payment to the relator, and unless the sheriff could prove them for his protection in the proceedings instituted by the attachment, he would have been completely deprived of all benefit from them. They were entirely proper for the consideration of the court in the proceedings taken to punish the sheriff for disobeying the order of the 10th of May, 1872, under the provisions contained in the order directing the attachment, as well as from the circumstances that the proceedings in the District Court of the United States were not concluded until long after the order, which was disobeyed, was made. At that time it could not be known whether the proceeding pending in the District Court would result in a direction adverse to the relator's claim, and it was not possible for the court to consider or adjudge the effect of such a direction.

The first opportunity for presenting and considering the effect of the determination which was made, was in the proceedings taken by the attachment, and in them it was fully shown, together with what preceded and followed it in the United States District Court. But notwithstanding the adjudication of that court, that the money in controversy should be paid by the sheriff to the assignee in bankruptcy, and the actual payment following it, the special term of this court held in the proceedings instituted by the attachment that the payment was unlawful, and that the sheriff must pay the money again to the relator. The effect of the decision is that the proceedings in the United States District Court, and pay-

ment under and pursuant to them, constituted no proper answer to the relator's demand for the same money. Whether that conclusion was correct or not, is the point now remaining to be considered in the disposition of the present appeal.

Under the bankrupt law, there can be no doubt but that the proper mode of determining the conflicting claims made for the money collected upon the execution, was by a bill in equity either by the assignee or the sheriff. That point has been definitely settled by the decisions made in *Smith* v. *Mason,* 14 Wall. 419, and *Marshall* v. *Knox,* 16 id. 551. But in both those cases the proceedings by petition were not only opposed by the parties proceeded against, but they were reviewed in the manner which the bankrupt law provided for that purpose. The present case is distinguishable from them in both respects. For the relator first consented to the reference of the claims under the petition of the assignee, and after a determination against her, denies its effect in a collateral proceeding. The proofs produced upon the hearing of the proceedings under the attachment show that her counsel consented to the reference in order to avoid the necessity of the more formal action by bill of complaint, and that consent was in no manner attempted to be withdrawn until it had been acted upon, and the reference ordered. After that, and after the objection was made before the register, that the proceeding should have been by bill, the relator proceeded with the hearing, and gave, as well as contested, evidence, which was pertinent to the settlement of the controversy embodied in the order. The objection was renewed in the brief presented to the United States court on the final hearing, but in the disposition then made of the case, it must have been disregarded.

That the United States District Court had jurisdiction over the controversy existing between the relator and the assignee is settled by the authorities already cited. And if her consent was sufficient to subject her to that jurisdiction by the proceedings commenced by the petition, then the objection afterward made did not have the effect of depriving the court of the authority which she had voluntarily given it over her person.

It had the power of subjecting her to its jurisdiction for the settlement of the dispute existing between her and its officer. But not by means of the summary proceeding taken by him, unless she elected to consent to it. But as she did consent, and the reference to take the proof was made upon that basis; by that act she sur-

rendered herself to the jurisdiction of that court for the purposes comprehended in the petition. She was irregularly brought before it but waived the irregularity by the assent to the proceedings which her counsel gave in her behalf. That gave it jurisdiction over her person, and as the subject-matter was within its lawful authority, that was sufficient to enable the District Court to proceed with the hearing and decision of the dispute concerning the money in the sheriff's hands. After jurisdiction was obtained in this manner over the relator, the court had the right to retain it until all the purposes of the proceeding were fully attained, *Pelts* v. *Davidson*, 37 N. Y. 235, 243; and even though it might have been an irregular proceeding, it was still binding and effectual as long as it was not reversed nor set aside.

This was held of a similar proceeding in the case of *People* v. *Norton*, 9 N. Y. 176, where a trustee had been removed by petition instead of by bill of complaint. By way of answering that objection it was replied in the opinion delivered, and concurred in by all the members of the court, that the Court of Chancery had general jurisdiction of all cases of trust and the power by its general authority independent of any statute to displace a trustee on good cause shown, and to substitute another in his stead. It is said that this must in all cases, according to the course and practice of that court, be done by bill and not upon petition. But a departure from the usual practice of the court in doing an act which the court has authority to do, does not render the act void. It may be irregular or erroneous, and upon a direct proceeding may be set aside or reversed; but its validity cannot be questioned in a collateral action.

This principle is directly applicable to this case, and the decision is a decisive authority against the position taken in the relator's behalf. And it is further fortified and maintained by the circumstance that consent has generally been held sufficient to confer jurisdiction over the person of the individual consenting to it. To the same effect, also, is the case of *Fisher* v. *Hepburn*, 48 N.Y. 41, 52. This was assumed to be the case in both the authorities cited from the United States Supreme Court Reports. For that court held that " strangers to the proceedings in bankruptcy, not served with process, and who have not voluntarily appeared and become parties to such litigation," cannot be compelled to come into court under a petition for rule to show cause." *Marshall* v. *Knox*,

16 Wall. 557. A voluntary appearance was evidently considered to be sufficient for all the purposes of jurisdiction, even over strangers to the proceeding.

The same thing was decided in *Ex parte Squires* v. *Broome Common Pleas,* 10 Wend. 600, where the defendant was served with a declaration out of the county, which gave the court no jurisdiction over his person. And it was held that he waived the objection by procuring an order in the cause that the plaintiff should file security for costs.

Objection to the jurisdiction over the person of a party may be expressly waived, and the same thing may be done by implication, by means of any act indicating it to be the design of the person entitled to make it, not to insist upon it. *Allen* v. *Malcolm,* 12 Abb. (N. S.) 335; *Hobart* v. *Frost,* 5 Duer, 672; *Baker* v. *Beaman,* 6 Hill, 47; *Conklin* v. *King,* 10 N. Y. 440, 446; *Buel* v. *Trustees of Lockport,* 3 id. 197, 200. And in *Clapp* v. *Graves,* 26 N.Y. 418, the principle was applied to the support of a judgment recovered before a justice, where the defendant, a non-resident, was proceeded against by a long instead of a short summons. As he appeared in the action and took no objection to the process, the jurisdiction over him was held to be complete; and that, too, when the statute provided that it could only be acquired by the service of a short summons. Other cases of a similar nature will be found in Vol. 2, Wait's Law and Practice, 17, 19.

Neither the case of the *Buffalo & State Line R. R. Co.* v. *Supervisors of Erie,* 48 N. Y. 93, nor that of *Bloom* v. *Burdick,* 1 Hill, 130, is opposed to this principle. In the latter, the real property of infants had been sold upon proceedings in a surrogate's court, without the appointment of a guardian for them. Being infants, they could not waive the defect, and for that reason the court had no jurisdiction over them. According to the authorities applicable to the present controversy, the relator was concluded by the proceedings, instituted with her consent, in the United States District Court, for the determination of the dispute concerning the title to the money in the sheriff's hands. *Dwight* v. *St. John,* 25 N.Y. 203; *Embury* v. *Conner,* 3 id. 511, 522. The determination there made fully justified him in paying it over to the assignee; and that was sufficient, under the circumstances properly appearing in the full hearing, allowed by the order directing the attachment, to exonerate him from the ordinary consequences which would otherwise have resulted

from his disobedience of the order of the 10th of May, 1872. By the proceedings taken with the relator's consent, she precluded herself from the right to complain of such disobedience.

The order appealed from should be reversed, with $10 costs besides disbursements, and the motion made denied, with $10 costs.

*Ordered accordingly.*