*In re* LITCHFIELD.

(*District Court, E. D. Michigan.* October 16, 1882.)

1. BANKRUPTCY — POSSESSION OF ESTATE BY ASSIGNEE — RIGHTS OF ADVERSE CLAIMANTS.

An assignee in bankruptcy may take peaceable possession of the bankrupt's estate wherever he can find it, but adverse claimants of such property, situated in districts other than the one wherein the bankruptcy proceedings are pending, may assert their rights to the same by bringing suits against the agents of the assignee in the state courts, or by notifying the custodians of such property not to deliver the same to the assignee, without being guilty of a contempt of the court by which the assignee was appointed.

2. SAME—DEFENSE OF TITLE BY ASSIGNEE—REMEDIES—INJUNCTION.

In such case, however, the assignee may either defend his title in the state court, or may file a bill in the circuit or district court of the United States praying that the rights of the adverse claimants be adjusted, and, as incidental thereto, that the actions in the state courts may be enjoined. The assignee cannot proceed in such case by summary petition.

3. CONTEMPT OF COURT—JURISDICTION OF OFFENSE.

*Quære.* Can a contempt of court, being a criminal offense, and therefore local in its nature, be committed except within the jurisdiction of the contemned court?

In Bankruptcy. On petition of the assignee for an injunction, and for an attachment for contempt against Thomas Nestor for unlaw-

fully interfering with the property of the bankrupt. The facts of this case are substantially as follows:

In 1873 Litchfield was adjudicated a bankrupt in the district court for the southern district of New York, and petitioner, who is a resident of the city of New York, was appointed assignee. Among the assets of the bankrupt were about 4,600 acres of pine land and mill property situated in his state, the title to which was vested in Litchfield under a deed made in 1863 from Henry C. Knight, receiver of the property of one Stewart, under a creditor's bill filed in this court. In 1874, one Johnson, who had been appointed administrator of Stewart's estate, he in the mean time having died, filed a bill against the petitioner in the southern district of New York for the recovery of these lands, claiming that the receiver's deed was invalid for want of jurisdiction in the court, and for irregularities in the proceedings; that the conveyance had been made to Litchfield in trust; and that the debt for which it had been deeded to him had been paid. The bill was, in short, a bill to redeem for the benefit of creditors of Stewart's estate, which was insolvent. This suit was afterwards compromised by the payment to Johnson of $15,000. In 1881 these lands were damaged to such an extent, by a fire which swept over that portion of the state, that the preservation of the timber rendered it necessary that it should be immediately cut, and petitioner procured an order from the district court for the southern district of New York to lumber the same, and in pursuance of such order made contracts with Brown & Davidson for stripping these lands. In pursuance of these contracts Brown & Davidson went upon the lands, and cut about 15,000,000 feet of timber, some of which has been manufactured into lumber and shipped eastward, and a portion of which is now in the hands of a boom company in process of floating down to the mill.

It further appears that in February or March, 1882, the heirs of Stewart, with one exception, conveyed all their interest in this property to one Nestor, who claims to be the owner in fee of two-thirds thereof. The petition alleges that this conveyance is made public by Nestor, who claims to have acquired a good title to the property, and to the logs, already cut and of the lumber manufactured from them; that by reason of his claims, and threats to take possession of the logs and lumber, petitioner was compelled, in order to induce purchasers to buy, to indemnify them, and covenant to protect them in the peaceable possession and enjoyment thereof. It appears that Nestor has replevied a portion of this lumber from one Fisher, who had bought the same from the assignee; that he has also brought actions of ejectment in the state courts against Brown & Davidson, and has given notice to the boom company, which now has possesion of a large amount of logs cut from these lands, not to deliver them to the petitioner, and has otherwise endeavored to embarrass him in his lumbering operations. These operations are carried on, not by the assignee personally, but by agents employed by him to manage his property in this state.

The assignee asks for an injunction to restrain Nestor from interfering with the logs cut, and to be cut, either by causing the same to be seized by any legal process, or by giving notice of his claim to them, to any custodian, or persons in possession thereof, and from making any claim to said logs or

lumber, or from slandering the title of the assignee, or from bringing or continuing any action of ejectment against the actual occupants of these lands under the assignee; and also asks for an order requiring Nestor to show cause why he should not be punished as for a contempt of the district court of the southern district of New York, for his interference with the lumber sold to Fisher, by causing the same to be seized by a writ of replevin, by serving notice of his claim to the logs in possession of the boom company, and by slandering petitioner's title to the logs in question,

Nestor claims, as did the administrator of Stewart, that the deed from Henry C. Knight, receiver, was void for several reasons; and further claims that the settlement made with Johnson as administrator of Stewart's estate was in no way binding upon the heirs of Stewart, or upon him as their grantee. He also claims to own the property in question; denies the authority of the district court for the southern district of New York to authorize the assignee to lumber the lands, or continue the business of said Litchfield beyond nine months after he was adjudged a bankrupt, or that said court had any authority to authorize the assignee to enter upon or do any acts upon lands in this state; and insists that the attempt of petitioner to carry on an extensive lumber business for several years, as shown by his petition, is in violation of the letter and spirit of the bankrupt act.

*W. Howard Wait* and *Ashley Pond*, for assignee.

*John Atkinson* and *Henry M. Duffield*, for respondent.

BROWN, D. J. The assignee insists that the respondent should be punished for contempt (1) in notifying the boom company not to deliver to the assignee the logs cut from the lands in question under authority of the order of the district court for the southern district of New York; (2) in bringing ejectment suits in the state courts against the parties in possession of these lands under the assignee; (3) in replevying a portion of the lumber cut from the logs from Fisher, who had purchased the same from the assignee.

The respondent insists with great earnestness that the district court for the southern district of New York, in which these bankruptcy proceedings are pending, had no jurisdiction to authorize the assignee to carry on lumbering operations upon lands situated in this district, both because the lands are not within the jurisdiction of that court, and because, under section 5062a, the court had no authority to direct the assignee to carry on the business of the debtor for a period exceeding nine months from the time he was declared a bankrupt, which time had elapsed long before the order was made. I find it quite unnecessary, however, to consider this point. In the view I take of the case it appears to me quite immaterial.

It goes without saying that an assignee in bankruptcy may, as soon as he has given bond and qualified, take immediate possession of all the property of the bankrupt found within his district. But if any portion of the property be in the possession of a third person claiming an adverse title thereto, the assignee may not proceed summarily to enforce his right, but is bound to institute a plenary suit at law or in equity to establish his title or recover possession. *Smith* v. *Mason*, 14 Wall. 419; *Marshall* v. *Knox*, 16 Wall. 551; *In re Marter*, 12 N. B. R. 187; *Knight* v. *Cheney*, 5 N. B. R. 305. So, if an assignee has taken peaceable possession of property, the adverse claimant may not take it away from him by force, or by replevin from a state court, but must petition the court of bankruptcy for its delivery to him. This is held to be the "proper action" provided for the relief of such parties. Rev. St. § 5069; *In re Vogel*, 7 Blatchf. 18. An attempt to take possession of property from the assignee by a writ of replevin from the state court is as much a contempt of the bankrupt court as if the plaintiff had endeavored to take it by force, and in such cases the sheriff will be ordered to return the property. *In re Vogel*, 7 Blatchf. 18; *In re Ulrich*, 6 Ben. 483; *In re People's Mail Steam-ship Co.* 2 N. B. R. 552; *In re Kerosene Oil Co.* 2 N. B. R. 538; *In re Atkinson*, 7 N. B. R. 143. The assignee is an officer of the court, and his possession is the possession of the court, and the familiar cases turning upon the relations of marshal and sheriff are applicable with equal force to the protection of an assignee. *Taylor* v. *Carryl*, 20 How. 583; *Freeman* v. *Howe*, 24 How. 450; *Buck* v. *Colbath*, 3 Wall. 324.

The rule is the same in cases of receivers. High, Receiv. § 163; *Noe* v. *Gibson*, 7 Paige, 514; *Albany City Bank* v. *Schermerhorn*, 9 Paige, 377. Indeed, the power of the district court to wind up bankrupt estates, unfettered by the interference of state courts, has been strongly asserted by this court, and I have seen no reason to change my views in that regard. To make a bankrupt law effectual there must be a court specially authorized to administer it. If assignees are bound to go from county to county, defending their rights to different parcels of an estate, the whole administration of the law might as well be vested in the state courts. It is no disrespect to those courts to say that the want of harmony in their decisions which would almost inevitably result, would go far towards destroying the efficiency of the system. It is almost as important that the administration of the law should be uniform, and subject to the guidance of

one supreme court, as that the law itself should conform to the constitutional requirement of uniformity. Hence, an exceptional power is given to the district courts in bankruptcy cases to enjoin proceedings in the state courts,—a power which has never been questioned since the decision of the supreme court in *Ex parte Schwab*, 98 U. S. 240. Not that this power should always be exercised when an assignee is defendant, since cases are numerous in which injunctions have been refused because it appeared that the case could be more conveniently and cheaply tried in the state courts. *In re Cooper*, 16 N. B. R. 178. The power to enjoin as in other cases is largely discretionary.

The proper practice in all cases where the assignee has taken possession of the property not belonging to the bankrupt requires the adverse claimant to go into the bankrupt court and make his claim to the property, or bring a plenary suit against the assignee. As I have already observed, an action of replevin will not lie against an assignee in such cases. Other suits, however, such as trespass or trover, where the property is not taken from the possession of the assignee by mesne process, may be properly begun in the state courts, and carried to a final determination, subject to a discretionary power in the bankruptcy court to transfer the litigation there. *Eyster* v. *Gaff*, 91 U. S. 525; *Sharpe* v. *Doyle*, 102 U. S. 686; *In re Moller*, 14 Blatchf. 207.

Thus far we have discussed the powers and immunities of an assignee within his own district. Other considerations present themselves when the authority of an assignee is sought to be enforced in other districts. I see no reason to question his authority to take peaceable possession of the property of the bankrupt, in whatever state or district he may find it, without application to the bankruptcy court of that district. But third persons, whose rights he may chance to assail, are entitled to protection. The power to punish those interfering with property in the possession of an assignee, or to enjoin the prosecution of suits in the state courts, presupposes that the adverse claimant may go into the bankruptcy court and have his right adjusted. But suppose the assignee, as in this case, sends his agent into another state to take possession of lands and lumber them, the adverse claimant cannot resort to the district court of this district for the assertion of his rights, since there is no case pending here, and no assignee within the district upon whom process can be served. Must he go to the southern district of New York, or, possibly, to the district of Oregon, to substantiate his claim? Clearly

not. A requirement of this kind would be an intolerable hardship. As the process of a bankruptcy court cannot reach into other districts, (*Jobbings* v. *Montague*, 6 N. B. R. 117; *Paine* v. *Caldwell*, 6 N. B. R. 558,) neither can inhabitants of other districts be compelled to resort to courts outside their own jurisdiction. Their only recourse, then, is to the state courts, in which suit may be begun against the persons in actual possession of the property, whether they be agents of the assignee or not. I am, therefore, clearly of the opinion that Nestor was not guilty of contempt in bringing the actions of ejectment, nor in giving notice to the boom company, although such notice would undoubtedly have been a contempt if the transaction had occurred within the district where the bankruptcy proceedings were launched.

The case of *Langford* v. *Langford*, High, Inj. § 170, note, is no authority for the order demanded by the petitioner. In this case the defendant, being in England and within the jurisdiction of the court of chancery there, a receiver was appointed over his estate in Ireland. The defendant instructed his solicitor in Ireland to oppose, as far as the law would permit, the receiver of the rents and profits of such estate from receiving the same. The solicitor accordingly notified defendant's tenants in Ireland that the order of the court of chancery in England appointing a receiver was of no effect in Ireland, and that defendant would still enforce payment of his rents as before. This was held to be a contempt of the court of chancery in England, and such it undoubtedly was. It is no authority, however, for holding that the solicitor in Ireland, who notified the tenants, could be proceeded against for a contempt either in the English or Irish court of chancery, though if he had been found in England he might have been arrested for any act done within that jurisdiction. But still I am of the opinion that Nestor had done nothing here of which the assignee is entitled to complain. Indeed, it is difficult to see how Nestor could be guilty of a contempt of the district court of southern New York for any act whatever done within this district. A contempt of court is a specific criminal offense. *New Orleans* v. *Steam-ship Co.* 20 Wall. 387, 392; *Hayes* v. *Fischer*, 102 U. S. 121; *Crosby's Case*, 3 Wilson, 188; *Williamson's Case*, 26 Pa. St. 24; *Ex parte Kearney*, 7 Wheat. 41; *U. S.* v. *Jacobi*, 1 Flippin, 108.

Whether, like all criminal offenses, it is local in its character, and must be tried in the jurisdiction where committed, which locality must also be within the jurisdiction of the contemned court, it is unnecessary to decide. Clearly one court cannot punish a contempt against

the authority of another. *Ex parte Tillinghast,* 4 Pet. 108; *People* v. *County Judge,* 27 Cal. 151; *Ex parte Chamberlain,* 4 Cow. 49; *Penn* v. *Messinger,* 1 Yeates, 2.

But I do not wish to be understood as saying that the assignee is without remedy. It is now settled that he may sue and collect the assets of the bankrupt within other districts than his own. *Lathrop* v. *Drake,* 91 U. S. 516. Within the same ruling I see no objection to his filing a bill or bills in the circuit or district court of this district, calling upon the respondent to come into such court and have his rights adjusted, and praying that he meanwhile be restrained from further prosecuting his actions in the state courts, or from interfering with the logs in the possession of the boom company. *Davis* v. *Friedlander,* 104 U. S. 570, 575. If the assignee is unwilling to contest his claims in the state court, he must provide a forum and a cause in which the respondent may assert them, as the latter is powerless in this regard. But I think such suit should be plenary in its nature; not only because it involves the title to the property in question, but because a summary petition is obnoxious to the ruling of the supreme court that "strangers to the proceedings in bankruptcy, not served with process, and who have not voluntarily appeared and become parties to such a litigation, cannot be compelled to come into court under a petition for a rule to show cause, as in this case; nor is the exercise of such a jurisdiction necessary, as the third clause of the second section of the bankrupt act affords the assignee a convenient, constitutional, and sufficient remedy to contest every adverse claim made by any person to any property or rights of property transferable to or vested in such assignee." *Smith* v. *Mason,* 14 Wall. 419; *Marshall* v. *Knox,* 16 Wall. 551, 557.

The case of *Samson* v. *Burton,* 6 N. B. R. 403, if in point at all, must be deemed to have been overruled by *Marshall* v. *Knox,* 16 Wall. 551, which appears to have been decided somewhat later.

It results that this petition must be dismissed without prejudice.