FIRST NAT. BANK OF THOMASVILLE, GA., v. HOPKINS.

(Circuit Court of Appeals, Fifth Circuit. October 28, 1912.)

No. 2,413.

BANKRUPTCY (§ 288*)—OWNERSHIP OF PROPERTY—DETERMINATION—SUMMARY PROCEEDINGS—ADVERSE CLAIM.

A bank, holding notes against a bankrupt for an amount larger than the bankrupt's total deposits, claimed the right to set off the notes against the deposits. The trustee claimed that the deposits had been made under a special arrangement for the benefit of all the bankrupt's creditors, to be paid to them on their debts pro rata, and that the bank had notice thereof. The deposits were entered on the bank's books to the credit of the bankrupt, without anything to show that they were

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

other than ordinary deposits, the greater part of which, at the time of the institution of bankruptcy, consisted of the proceeds of a note given to the bankrupt for the purchase of its goods. *Held*, that the bank's claim was not merely colorable, but was an adversary one, which could be determined only in a plenary suit between the bank and the trustee, and not by summary proceedings in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*]

Appeal from the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Summary proceeding by J. S. Hopkins, trustee in bankruptcy of the Montgomery Drug Company, against the First National Bank of Thomasville, Ga. From an order requiring the bank to pay over certain deposits to the trustee, it appeals. Reversed.

W. C. Snodgrass and J. H. Merrill, both of Thomasville, Ga., for appellant.

J. B. Copeland, of Valdosta, Ga., and George S. Jones and Orville A. Park, both of Macon, Ga., for appellee.

Before PARDEE, Circuit Judge, and NEWMAN and MEEK, District Judges.

NEWMAN, District Judge. The judgment of the court which is for review here is a judgment and order made on a summary proceeding instituted by J. S. Hopkins, trustee in bankruptcy of the Montgomery Drug Company, against the First National Bank of Thomasville, Ga. The order, which was the final disposition of the matter then before the court, directed the bank to pay over to Hopkins, trustee, "forthwith," the sum of $10,298.54, the amount of money in the possession of said bank belonging to the estate of the Montgomery Drug Company, bankrupt, together with interest thereon at the rate of 7 per cent. per annum from the 17th day of November, 1911.

Without reference to the merits of the matter in controversy, we must first consider whether, under the facts, it was a case where a summary proceeding, and an order made therein, was justified, or whether it was a case in which the defendant was entitled to be heard in a plenary proceeding instituted by the trustee, going through the regular course of such proceedings and with the rights incident thereto. The respondent to the rule made in the summary proceeding raised this question by demurrer at the beginning of the proceeding and in response to the trustee's petition, and also by special objection to the petition made when the matter came on for a hearing before the District Judge. These objections to the character of the proceeding were overruled, and the court proceeded to hear the matter upon certain evidence which had been taken by reference to a master, and made the order referred to above.

The amount named in the judge's order, and which the bank was directed to pay over, at once to the trustee, was on deposit in the bank to the credit of the Montgomery Drug Company when bank-

ruptcy proceedings were instituted against that company. The bank held notes against the Montgomery Drug Company for a larger amount than the Drug Company's total deposits, and claimed the right to set off the notes against the deposits. The objection to this on the part of the trustee for the Montgomery Drug Company was that nearly all of the deposits standing to the credit of the Montgomery Drug Company in the bank had been deposited under a special arrangement, by which it was put there for the benefit of all the creditors of the Drug Company, to be paid to them on their debts, pro rata, and that the bank officers had notice that such was the character of the deposits.

This was the matter at issue between the parties—that is, between the trustee in bankruptcy and the bank—when this summary proceeding was instituted. The deposits were entered on the books of the bank to the credit of the Montgomery Drug Company, and were ordinary deposits put by the bank on the Drug Company's deposit book. There was nothing whatever on the books of the bank to show that it was anything other than an ordinary deposit. The proceeds of a note given to the Montgomery Drug Company, for the purchase of its goods, amounting to $10,000, and put to the credit of the Montgomery Drug Company, constituted the greater part of the deposits at the time of the institution of the bankruptcy proceedings.

It is generally understood, of course, that Mueller v. Nugent, 184 U. S. 1, 15, 22 Sup. Ct. 269, 275 (46 L. Ed. 405), lays down the rule governing in such cases, which is stated in the opinion by Chief Justice Fuller as follows:

"But suppose that respondent had asserted that he had the right to possession by reason of a claim adverse to the bankrupt, the bankruptcy court had the power to ascertain whether any basis for such a claim actually existed at the time of the filing of the petition. The court would have been bound to enter upon that inquiry, and in doing so would have undoubtedly acted within its jurisdiction, while its conclusion might have been that an adverse claim, not merely colorable, but real, even though fraudulent and voidable, existed in fact, and so that it must decline to finally adjudicate on the merits. If it erred in its ruling either way, its action would be subject to review."

A distinction must be drawn, therefore, between a real adverse claim and a claim merely colorable. In Mueller v. Nugent, supra (184 U. S., at page 17, 22 Sup. Ct., at page 276 [46 L. Ed. 405]), it is said in the opinion.

"In the case before us, William T. Nugent held this money as the agent of his father, the bankrupt, and without any claim of adverse interest in himself. If it was competent to deal with Davidson, the assignee in the case of Bryan v. Bernheimer, by summary proceeding, William T. Nugent could be dealt with in the same way."

The bankrupt's son held money of his father, to which he made no claim whatever, and he was ordered, in the summary proceeding, to turn it over to the trustee.

In the case of Louisville Trust Co. v. Comingor, 184 U. S. 18, 25, 22 Sup. Ct. 293, 296 (46 L. Ed. 413), in the opinion of Mr. Chief

Justice Fuller, applying the distinction drawn in Mueller v. Nugent above quoted, to the facts of the Comingor Case, this is said:

"The proceeding was purely summary. The determination of the merits on the facts was not open to revision by appeal or writ of error under the bankrupt law. If Comingor had been entitled to a trial by jury, he could not have obtained it as of right. The collection of the amounts found due would be enforceable, not by execution, but by commitment. 'We think that it could not have been the intention of Congress thus to deprive parties claiming property, of which they were in possession, of the usual processes of the law of defense of their rights.' Marshall v. Knox, 16 Wall. 556 [21 L. Ed. 481]; Smith v. Mason, 14 Wall. 419 [20 L. Ed. 748]. The question is whether the District Court had jurisdiction to finally adjudicate the merits in this proceeding. We have just held in Mueller v. Nugent [184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405] that the District Court has power to ascertain whether in the particular instance the claim asserted is an adverse claim existing at the time the petition was filed, and according to the conclusion reached the court will retain jurisdiction or decline to adjudicate the merits. Jurisdiction as to the subject-matter may be limited in various ways, as to civil and criminal cases, cases at common law or in equity or in admiralty, probate cases or cases under special statutes, to particular classes of persons, to proceedings in particular modes, and so on. In many cases jurisdiction may depend on the ascertainment of facts involving the merits, and in that sense the court exercises jurisdiction in disposing of the preliminary inquiry, although the result may be that it finds that it cannot go farther. And where, in a case like that before us, the court erroneously retains jurisdiction to adjudicate the merits, its action can be corrected on review. We are of the opinion that, even if Comingor could have consented to be pursued in this manner, he did not so consent. He was ruled to show cause, and the cause he showed defeated jurisdiction over the subject-matter; that is, jurisdiction to proceed summarily. He did not come in voluntarily, but in obedience to peremptory orders, and, although he participated in the proceeding before the referee, he had pleaded his claims in the outset, and he made his formal protest to the exercise of jurisdiction before the final order was entered. He had been restrained from settling his accounts in the state court in the action pending there, and the District Court, instead of dissolving the injunction, declining jurisdiction, and leaving the litigation to the state court, either in due course, or by plenary suit, adjudicated the merits and entered a peremptory order that he should pay over, disobedience of which order was punishable by commitment. We think that in this there was error, and that the Circuit Court of Appeals was right in its decree of reversal."

In Jaquith v. Rowley, 188 U. S. 620, 625, 23 Sup. Ct. 369, 371 (47 L. Ed. 717), in the opinion by Mr. Justice Peckham, this is said, referring to Mueller v. Nugent:

"In other words, Nugent's Case simply holds that, where the agent held money belonging to the bankrupt, to which he made no claim, but simply refused to give up the property, which he acknowledged belonged to the bankrupt, the bankruptcy court had power, by summary proceedings, to order him to deliver such property to the trustee in bankruptcy. The case before us is wholly different. The surety claims the right to hold the money as against everybody until his liability on the bail bond is satisfied, and that claim is adverse to any claim that the trustee may make upon him for the money which is to indemnify him as stated."

See, also, Collier on Bankruptcy (9th Ed.) p. 489 et seq.; Remington on Bankruptcy, vol. 1, p. 1019, § 1652 et seq.; Loveland on Bankruptcy, vol. 1, p. 123, § 37 et seq.

We must determine, therefore, on the facts of the present case, before going into it further, whether there was a real adverse claim

on the part of the bank, without reference to what its merits might be when heard and determined, or whether it was merely colorable.

It is perfectly clear to us that the claim of the bank in this case was a real adverse claim, and not merely colorable. The result of this is that the bank had the right to object to this summary proceeding which was instituted against it, and that the objection to such a proceeding should have been sustained, without prejudice to the right of the trustee to proceed against it by plenary suit, as he might be advised.

The order and judgment of the District Court is reversed, and the case remanded for further action in accordance with this opinion.