In re MIDTOWN CONTRACTING CO.

(Circuit Court of Appeals, Second Circuit. May 8, 1917.)

No. 225.

1. BANKRUPTCY ⬅️293(1)—JURISDICTION OF COURTS OF BANKRUPTCY—ADVERSE CLAIMS.

Bankr. Act July 1, 1898, c. 541, § 23a. .30 Stat. 552 (Comp. St. 1916, § 9607), provides that United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees and adverse claimants concerning property acquired or claimed by the trustees, to the same extent only as though such controversies had been between the bankrupts and such adverse claimants. Subdivision "b" provides that suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt might have brought or prosecuted them, if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant. *Held* that, if a real adverse claim exists, as distinguished from one merely colorable, the claimant cannot be compelled against his will to try the issue in the bankruptcy court, and whether the claim is real or colorable does not depend upon whether it turns upon a question of fact or one of law, but on whether the claim rests upon mere pretense of fact or law, not put forward in good faith, and if there is a real question, either of law or fact, the trustee must institute his independent action in a court having jurisdiction of the subject-matter.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 411.]

2. BANKRUPTCY ⬅️288(1)—SUMMARY PROCEEDINGS—NATURE OF CLAIM.

A contract for the construction of a school building authorized the board of education, upon the contractor's default, to stop all work by the contractor and complete the contract itself, and in such case to use all equipment and materials found upon the work. *Held* that, where the board had declared the contractor in default and taken possession of his plant and building material before a petition in bankruptcy was filed, its claim to such material and plant involved a substantial question of law, which could not be determined in a summary proceeding, except with the board's consent.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447.]

Hough, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the Midtown Contracting Company, bankrupt. On petition to revise an order (238 Fed. 871) reversing an order of the referee denying a petition of the trustee for a summary order requiring the Board of Education of the City of New York to deliver certain property to him. Reversed, and trustee's motion denied.

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Lamar Hardy, Corp. Counsel, of New York City (R. Percy Chitten-den and Joseph L. Pascal, both of New York City, of counsel), for petitioner.

Olcott, Gruber, Bonynge & McManus, of New York City (David W. Kahn, of New York City, of counsel), for trustee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge. The petitioner claims to be entitled to use certain building material and equipment brought by the bankrupt upon the grounds of the Evander Childs High School, in the borough of the Bronx, in the city of New York, for the completion of the high school under a certain contract for the construction of the building entered into between the petitioner and the bankrupt, dated October 13, 1914. The contract provided that the contractor should furnish all the labor and material necessary for the erection of the building for the sum of $414,141.00 to be paid in certain installments. Payments under the contract have been made to the amount of $275,721.39.

It appears that before the work called for by the contract was completed the contractor found itself in financial difficulties and did not prosecute the work. Thereupon in July, 1916, the superintendent of school buildings certified to the committee on school buildings of the board of education that the performance of the work under the contract was unnecessarily and unreasonably delayed, and that the contractor was willfully violating the conditions and covenants of the contract, and that the work was not being done or progressing according to the terms of the contract. And on the 9th day of August, 1916, the committee on school buildings passed resolutions declaring the contractor to be in default, and notified the contractor to discontinue all work under this contract, and that it would proceed to complete the building under the provisions of clause Q of the contract.

A written notice to the foregoing effect, signed by the chairman of the committee on school buildings, was served upon the contractor on the 11th day of August, 1916, on which day the board of education of the city of New York took possession of the building material and plant on the grounds of the Evander Childs High School, which had been brought there by the contractor, and it placed watchmen to take care of the uncompleted building and of the building material and plant on the grounds. Thereafter the board relet the contract for the completion of the Evander Childs High School to Conners Bros. Company, by which contract the board gave to Conners Bros. Company the right to use the building material and plant of the Midtown Contracting Company upon the line of the work in the completion of the building.

Clause Q of the contract contained the following provision:

" * * * If at any time the superintendent of school buildings shall be of the opinion, and shall so certify in writing to the committee on buildings, that the performance of the contract is unnecessarily or unreasonably delayed, or that the contractor is willfully violating any of the conditions or covenants of this contract, * * * the committee on buildings shall notify the contractor to discontinue all work or any part thereof, under this contract, * * * and thereupon the contractor shall discontinue the work or such part thereof, and the board of education shall thereupon have the power

to contract for the completion of the contract in the manner prescribed by law, or to place such and so many persons as it may deem advisable, by contract or otherwise, to work at and complete the work herein described, or such part thereof, and to use such materials as he may find upon the line of the work, and to procure other materials for the completion, so as to fully execute the same in every respect, and the cost and expenses thereof at the reasonable market rates shall be a charge against the contractor, who shall pay to the party of the first part the excess thereof, if any, over and above the unpaid balance of the amount to be paid under this contract; and the contractor shall have no claim or demand to such unpaid balance, or by reason of the nonpayment thereof to him, and shall forfeit all claim to any moneys retained; and no molds, models, centers, scaffolding, planks, horses, derricks, tackle, implements, power plants, or building material of any kind belonging to or used by the contractor shall be removed so long as the same may be wanted for the work."

On the 15th day of August, 1916, or six days after the board of education had declared the Midtown Contracting Company to be in default, and after the board had taken possession of the building material and plant of the contractor upon the line of the work under clause Q of the contract, an involuntary petition in bankruptcy was filed, and on the 7th day of September, 1916, the contractor was adjudged a bankrupt. The trustee of the bankrupt on December 9, 1916, made a motion before the referee in bankruptcy for an order requiring the department of education to turn over to the trustee all of the building material and equipment brought on the ground of the high school by the bankrupt for use in the construction of the building under the contract, and declaring that the claim of title thereto set up by the department of education was colorable and void as against the trustee.

The attorneys for the trustee contended before the referee that the above provision of the contract, whereby the contractor gave to the board of education of the city of New York the right to use its materials and plant upon the line of the work to complete the building in case the contractor defaulted, was invalid as against the trustee of the bankrupt contractor; and the attorney for the city of New York asserted that a question of fact was involved, and denied that the referee was without jurisdiction to pass upon the issues raised by the opposing affidavits. On the record, the assets in controversy appear to have been purchased from unspecified materialmen and to have been brought on the ground by the contracting company after the date of the contract, and at all times thereafter to have been owned by the contractor. The record also discloses that possession of the assets was taken by the department of education before the filing of the petition in bankruptcy.

The referee denied the petition of the trustee for the summary order requested, stated that he was satisfied that the controversy was one in which the parties should be remitted to a plenary action, and that he was without authority to grant a summary order. The District Judge has reversed the referee, and held that the trustee is entitled to the summary order asked for by him. Judge Mayer in his opinion declares that there is no dispute of fact between the parties, and adds, whether or not a summary order is the proper relief depends solely upon whether the question involved is one of fact or one of law.

It is not disputed that, at the time the board of education took possession of the property involved herein, the bankruptcy proceedings had not been instituted. With this fact conceded, we are led to inquire as to the effect of the appointment of the trustee in bankruptcy upon the rights of the board of education in this property. The property being of a tangible nature and in possession of the city of New York, which claims a beneficial interest therein, can the city be compelled by the trustee to have its rights adjudicated in a summary proceeding in a court of bankruptcy, or is the city entitled to be heard in a plenary action?

Section 23 of the Bankruptcy Act reads as follows:

"Sec. 23. a. The United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants.

"b. Suits by the trustee shall only be brought or prosecuted in the courts where the bankrupt, whose estate is being administered by such trustee, might have brought or prosecuted them if proceedings in bankruptcy had not been instituted, unless by consent of the proposed defendant, except suits for the recovery of property under section sixty, subdivision b; section sixty-seven, subdivision e; and section seventy, subdivision e. * * *"

U. S. Compiled Statutes (1916) Ann. volume 9, § 9607.

The exceptions under clause "b" do not now concern us, and they relate to certain cases over which the federal and state courts are given a concurrent jurisdiction. The Supreme Court repeatedly held under the Bankruptcy Act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) that the right of an assignee in bankruptcy to assert a title in property transferred by the bankrupt before the bankruptcy to a third person who thereafter claimed to hold it adversely to the assignee could only be enforced by a plenary suit at law or in equity under the second section of the act, and not by summary proceedings under the first section thereof. Smith v. Mason, 14 Wall. 419, 20 L. Ed. 748 (1871); Marshall v. Knox, 16 Wall. 551, 557, 21 L. Ed. 481 (1872); Eyster v. Gaff, 91 U. S. 521, 525, 23 L. Ed. 403 (1875). In the case last cited the court, speaking through Mr. Justice Miller, said:

"The opinion seems to have been quite prevalent in many quarters at one time, that, the moment a man is declared bankrupt, the District Court which has so adjudged draws to itself by that act not only all control of the bankrupt's property and credits, but that no one can litigate with the assignee contested rights in any other court, except in so far as the Circuit Courts have concurrent jurisdiction, and that other courts can proceed no further in suits of which they had at that time full cognizance; and it was a prevalent practice to bring any person, who contested with the assignee any matter growing out of disputed rights of property or of contracts, into the bankrupt court by the service of a rule to show cause, and to dispose of their rights in a summary way. This court has steadily set its face against this view. The debtor of a bankrupt, or the man who contests the right to real or personal property with him, loses none of those rights by the bankruptcy of his adversary. The same courts remain open to him in such contests, and the statute has not divested those courts of jurisdiction in such actions. If it has for certain classes of actions conferred a jurisdiction for the benefit

of the assignee in the Circuit and District Courts of the United States, it is. concurrent with and does not divest that of the state courts."

In Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175 (1900), the court had the act of 1898, the one now in force, under consideration. Attention was directed to the omission from that act of certain provisions contained in the act of 1867, before referred to, and the addition in their place of section 23, and it was held that the District Court could not, without the defendant's consent, enter-tain jurisdiction over .suits brought by trustees in bankruptcy to set aside transfers of property made by a bankrupt to third parties before the institution of the proceedings in bankruptcy. .

In Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405 (1902), the Supreme Court recognized the right to proceed summarily where the adverse claim is merely colorable. By proceedings sum-marily is meant by petition and rule to show cause. The question pre-sented in that case was whether the trustee is obliged to resort to a plenary suit in cases where property of a bankrupt comes into the pos-session of a third party as the agent of the bankrupt, before the filing of the petition in bankruptcy and to which such third party asserts no adverse claim but simply refuses to turn over the property. The con-clusion was that in the case of claims merely "colorable" there is no necessity for a plenary action. The court said:

"The bankruptcy court would be helpless indeed if the bare refusal to turn over could conclusively operate to drive the trustee to an action to recover as for an indebtedness, or a conversion, or to proceedings in chancery, at the risk of the accompaniments of delay, complication, and expense, intended to be avoided by the simpler methods of the bankrupt law."

In the above case emphasis is to be laid on the fact that the property came into the possession of the third party as the agent of the bank-rupt and that he asserted no adverse claim.

In Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620 (1902), it was held that the District Court did not have jurisdiction in a summary proceeding on the petition of the trustee to compel one, who received money to indemnify him for giving bail bonds for a per-son subsequently and more than four months thereafter adjudicated a bankrupt, to turn over to the trustee in bankruptcy the money so re-ceived. The court, through Mr. Justice Peckham, said:

"To extend such a jurisdiction over an adverse claimant would be within the prohibition of section 23, 'a' and 'b,' whether such jurisdiction were ex-erted by an action strictly so-called or by a summary application to the court in bankruptcy. It is ,the exercise of jurisdiction which the section prohibits, and the particular method of procedure in the court is immaterial. The surety in whose hands the money was deposited to indemnify him for his liability on the bail bond was an adverse claimant within the meaning of that section of the act, and could not be proceeded against in the bankruptcy court unless by his consent, as provided for therein. It is not necessary in order to be an adverse claimant that the surety should claim to be the ab-solute owner of the property in his possession. It is sufficient if, as in the present case, the money was deposited with him to indemnify him for his liability upon the bail bond and that liability had not been determined and satisfied. If the trustee desire to test the question of the right of the surety to retain the money he must do so in accordance with the provisions of the section of the bankrupt law above referred to."

In Babbitt v. Dutcher, 216 U. S. 102, 113, 30 Sup. Ct. 372, 377, 54 L. Ed. 402, 17 Ann. Cas. 969 (1909), the court, speaking through Mr. Chief Justice Fuller, said:

"There are two classes of cases arising under the act of 1898 and controlled by different principles. The first class is where there is a claim of adverse title to property of the bankrupt, based upon a transfer antedating the bankruptcy. The other class is where there is no claim of adverse title based on any transfer prior to the bankruptcy, but where the property is in the physical possession of a third party or of an agent of the bankrupt, or of an officer of a bankrupt corporation, who refuses to deliver it to the trustee in bankruptcy. In the former class of cases a plenary suit must be brought, either at law or in equity, by the trustee, in which the adverse claim of title can be tried and adjudicated. In the latter class it is not necessary to bring a plenary suit, but the bankruptcy court may act summarily, and may make an order in a summary proceeding for the delivery of the property to the trustee, without the formality of a formal litigation."

According to the doctrine thus stated by the Chief Justice, as the title or beneficial interest of the city of New York is adverse and is based upon a transfer antedating the bankruptcy, the trustee must bring a plenary action in which the claim can be adjudicated.

In Re Howe Manufacturing Company (D. C.) 193 Fed. 524 (1912), District Judge Evans, in discussing the summary jurisdiction of the bankruptcy court, said:

"While considering this question, we may also inquire whether relief could be given the trustee in this proceeding in bankruptcy proper, either summarily or by a plenary action (if we can regard the petition as such) filed therein. As we have seen, the trustee was directed to proceed against Jefferson. But it did not follow that it could introduce another action into this proceeding in bankruptcy in order to do so. If in a proceeding in bankruptcy proper the trustee could intrude a separate suit against every debtor of the bankrupt, no difference what the demand might be, we should have a conglomeration of issues of the most remarkable extent and character in a bankruptcy proceeding. Nothing of the sort was contemplated by Congress, nor provided for by the act. On the contrary, the trustee, if he succeeds to the rights of the bankrupt, must do as the latter would have been compelled to do, and, if he have any claim to property or any right to recover upon any indebtedness alleged to be due from another person, he must, like every other litigant, institute his own separate and independent action in a court having jurisdiction of the subject-matter, and have his claim regularly adjudicated in due course of law. Being a trustee in bankruptcy gives him no special privileges in the courts. He stands there like other people. These general propositions seem to admit of no doubt. There are cases, however, which are exceptional, and in them summary proceedings may be resorted to, for example, in cases where property is in the possession of the trustee and therefore in custodia legis. If that possession is interfered with, summary action is admissible, and where the bankrupt refuses, or some agent of his refuses, to deliver to the trustee property belonging to the estate, a similar course is open. But these exceptions do not embrace cases where there are adverse claims to the property made in good faith, nor those in which there is an outstanding indebtedness of any character. Nor do they embrace a case where a third person has the property in his possession claiming it adversely, nor a case where recovery on a contract is sought, for in respect to all such cases it cannot be said that the debtor is in 'possession' of any property of the estate within the rule as to summary proceedings."

And in Re Bacon, 210 Fed. 129, 134, 126 C. C. A. 643, 648 (1913), we said:

"If it be ascertained by proper inquiry that a real adverse claim exists, no matter how ill supported it may appear to be, a court of bankruptcy cannot summarily decide as to the validity of the claim."

In Re Luken, 216 Fed. 890, 133 C. C. A. 94 (1914), the question was before the Seventh Circuit. The court said:

"In the present proceeding there is no conflict about the facts, and the trustee therefore contends that the bankruptcy court had summary jurisdiction to compel Steger to surrender possession by the summary process of a contempt order or other summary means. His argument is that, * * * the legal proceedings being taken against the defendant therein while the defendant was insolvent, we might have no difficulty, the facts being undisputed, in determining that the adverse holder's claim of legal right to retain possession was so clearly without substance, so void of color, as to bring him within the summary jurisdiction of the bankruptcy court. But it seems to us that a controversy may be as substantial in regard to the legal rights of a party on undisputed facts as is a controversy wherein the only conflict is on the facts. Our observation and experience is that there are fully as many controversies in plenary suits over the question of legal rights on undisputed facts as there are controversies respecting the facts."

In Remington on Bankruptcy (2d Ed. 1915) § 1796, the author, in referring to the matter of summary jurisdiction, states that, if some third party claims a beneficial interest in the property which he has in his possession (except in certain instances with which we are not now concerned), "he need not come into the bankruptcy proceedings for his rights, and the trustee cannot bring him into the proceedings and he is entitled to be heard in a plenary action."

In Black on Bankruptcy, § 404, the law is stated as follows:

"Whenever a trustee in bankruptcy lays claim to money or property which is in the possession of a third person, and petitions for an order requiring its surrender to him, the court of bankruptcy has jurisdiction to cite such person to show cause why he should not be required to yield up the money or property to the trustee. And if the respondent denies that the property in question belongs to the estate in bankruptcy and sets up a claim of title in himself, the court has jurisdiction to inquire and determine whether or not such claim is genuine, really adverse, and interposed in good faith. If it shall determine that such claim is merely colorable or fictitious, frivolous on its face or plainly false, or manifestly pretended and without any foundation in law, it may proceed to make the order asked by the trustee; but on the other hand, if it shall be determined that the respondent's claim to the property is genuine and interposed in good faith and with the intention of supporting it, the court cannot proceed to inquire into the merits, but must dismiss the petition and remit the trustee to his remedy by a plenary suit."

The courts have held in numerous cases that a stranger to the proceedings in bankruptcy, who sets up an adverse title to property which is claimed by the trustee as assets of the bankrupt, cannot be compelled to submit his claim to adjudication in a summary proceeding in the court of bankruptcy provided his claim is made with the apparent intention of defending it in good faith and is not merely colorable, but is entitled to be heard in a plenary suit. Courtney v. Shea, 225 Fed. 358, 140 C. C. A. 382 (1915); In re McCrum, 214 Fed. 207, 130 C. C. A. 555 (1914); First National Bank v. Hopkins, 199 Fed. 873, 118 C. C. A. 321 (1912); Johnston v. Spencer, 195 Fed. 215, 115 C. C. A. 167 (1912); Cooney v. Collins, 176 Fed. 189, 99 C. C. A. 543 (1910); In re Horgan, 158 Fed. 774, 86 C. C. A. 130 (1907); In re Baudouine, 101 Fed. 574, 41 C. C. A. 318 (1900).

[1] We understand the rule in all such cases to be that if a real adverse claim exists, as distinguished from one which is merely color-

able, the claimant cannot be compelled against his will to try the issue in the court of bankruptcy. Whether the claim is real or colorable does not depend upon whether it turns upon a question of fact or upon a question of law. Does the claim rest upon mere pretense of fact or of law? Is it put forward in good faith, and in that sense is it real? Or is it put forward in bad faith, and therefore unreal? If there is a real question either of law or of fact, the claimant need not submit it to the court of bankruptcy, unless he consents to do so; but the trustee must institute his independent action in a court having jurisdiction of the subject-matter and have the claim regularly adjudicated, as the bankrupt himself must have done, had bankruptcy proceedings not been pending.

Bankruptcy proceedings are a branch of equity jurisprudence, and the provisions of the Seventh Amendment securing a right to trial by jury are not applicable thereto. The issues involved in such proceedings are therefore to be tried by the court, subject to the right of the court in its discretion to submit any specific question of fact to a jury in which case the jury's determination is merely advisory, and subject to the further exception that the Bankruptcy Act expressly gives to the debtor resisting his adjudication as a bankrupt the absolute right to have the issues as to his insolvency and as to his having committed the act of bankruptcy charged determined by a jury. U. S. Compiled Statutes, volume 9, § 9603. But this right is personal to the bankrupt, and can only be had on his demand, and then simply as regards the two questions above mentioned. It is evident, therefore, that, if a trustee seeks to recover property held by an adverse claimant, the latter should have the same right as against him that he had as against the bankrupt to have his claim of title passed on by a jury in a plenary action, unless his claim is clearly colorable.

If, however, the claim does not rest upon a disputed question of fact, but rests upon a question of law, which must be decided in any event by a court, it is not so evident that upon principle it should be determined in a plenary suit, rather than summarily in the bankruptcy court. To allow the matter to be disposed of in a summary proceeding deprives the claimant of no constitutional right, not being contrary to due process of law. It is the general purpose and policy of the bankruptcy law to settle estates with expedition and without unnecessary expense. If an adverse claim which turns on a question of law is not to be settled in the bankruptcy court without the bankrupt's consent, it may cause delay in the settlement of the estate and increase the expenses incident thereto. But it does not follow for any of these reasons that a claim based on a question of law which is not colorable can be disposed of in a summary proceeding.

The District Judge in the case at bar arrived at the conclusion he did because of a misapprehension of two cases decided by this court, which he thought were intended to lay down the proposition that whether or not a summary order is the proper relief depends solely upon whether the question involved is one of fact or one of law. In the case of In re R. & W. Skirt Co., 222 Fed. 256, 138 C. C. A. 67 (1915), payment of a debt was conceded to have been made out of the bankrupt's estate after the petition in bankruptcy was filed and the

64 243 FEDERAL REPORTER

question was whether money so paid was recoverable in a summary proceeding. This court, speaking through Judge Coxe, said:

"This upon admitted facts is a question of law. The court would, therefore, have been justified in dealing with it in a summary proceeding and, in order that the estate may be speedily and economically settled, it should have done so. These views, we think, are supported by Lazarus v. Prentice, 234 U. S. 263, 266, 34 Sup. Ct. 851, 58 L. Ed. 1305; Everett v. Judson, 228 U. S. 474, 478, 33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814; Mueller v. Nugent, 184 U. S. 17, 22 Sup. Ct. 269, 46 L. Ed. 405."

While the question was one of law, it was purely colorable, and all that was actually decided was that an adverse claim merely colorable, though there was no disputed question of fact, but only of law, could be determined by summary order.

In Alco Film Corp. v. Alco Film Service of Minnesota, 234 Fed. 55, 148 C. C. A. 71 (1916), this court held that the District Court had jurisdiction to proceed by summary order to dispose of claims, the facts being undisputed. The District Judge had exercised his jurisdiction and in his opinion said:

"The first objection proceeds upon the theory that, where facts are undisputed, and only a question of law is involved, and the question of law is debatable, the person resisting is an adverse claimant. Such is not the law."

This court did not pass on the language quoted, but simply affirmed the orders holding that the objection to the jurisdiction had been waived. The adverse claim was clearly colorable.

In Re Michaelis & Lindeman, 196 Fed. 718 (1912), which was a case in the District Court for the Southern District of New York, the learned District Judge, after stating that there is no power in the bankruptcy court by summary order to divest a third party of any title (even a fraudulent one) asserted by him against the bankrupt or his trustee, added:

"But this does not prevent the entry of a summary order, where the only title set up rests, not upon any matter of fact, but upon a statement of law."

No authority is cited and no reason is given for this statement of the law.

In 7 Corpus Juris, p. 106, it is said that, when goods alleged to belong to the bankrupt are in the possession of a third person claiming to be the owner:

"The true rule as to such cases appears to be that the court of bankruptcy has jurisdiction to proceed summarily to the extent of ascertaining whether or not there is any foundation for the adverse claim, and if it appears to be without foundation it may order the property turned over to the trustee; but if it appears that there is some foundation for the adverse claim and questions of fact are involved, the summary proceedings can go no further and the right of possession must be tried in plenary action."

If the writer would have it understood that if the adverse claim has some foundation, and questions of law and not of fact are involved, it may be disposed of summarily, the authorities he cites do not support him; and we are not disposed to attribute to him any such intention. We do not feel ourselves concluded by the two previous decisions of this court, for we do not understand them, or either

of them, as intending to assert that an adverse claim which is not colorable can be summarily settled in the bankruptcy court against the consent of the claimant, provided it raises an issue of law and not of fact. We find no support for that view in the decisions of the Supreme Court, or in those of any of the Circuit Courts of Appeals or in any of the District Courts, except in the Southern district of New York.

[2] The question raised by the adverse claimant clearly involves a substantial question of law, and therefore it cannot be determined in a summary proceeding, except with the claimant's consent.

The order of the District Judge is reversed, and the motion of the trustee is denied.

HOUGH, Circuit Judge (dissenting). This petition to revise should be dismissed; it was prematurely or improperly taken. The referee refused jurisdiction upon inspection of pleadings. The court reversed his order, and instructed him to proceed with an ascertainment of facts. This was in accordance with the ruling in Re Goldstein, 216 Fed. 888, 133 C. C. A. 91 (C. C. A. 7th), to the effect that the District Court may pursue the summary method to the point of ascertaining that the alleged adverse claim is substantial and not merely colorable. No trial was ever had, and the order directing it is the subject for review. As we have no means of knowing whether the claim is either adverse or colorable, except an ex parte statement, there is nothing to review. For this reason I dissent from the judgment given.

But the opinion of this court, dealing with what I consider a moot point, asks and answers the question: What is a colorable adverse claim? In so doing the prior decisions of this court have been disapproved; therefore I dissent from the opinion. It seems to be admitted (and is undeniable) that under Babbitt v. Dutcher and Mueller v. Nugent, supra, the bankruptcy court may not proceed summarily to adjudicate upon the rights of an adverse claimant whose claim is more than colorable and based upon a transfer antedating the bankruptcy. Whether in this case there ever was a transfer antedating bankruptcy is the question of fact, as to which no evidence has been taken. This renders inquiry into the meaning of the words "colorable" and "adverse" necessarily in vacuo.

The proposition laid down for law is that of In re Luken, 216 Fed. 890, 133 C. C. A. 94, and is equivalent to saying that, assuming no disputed question of fact, any debatable proposition of law constitutes its maker an adverse claimant. This in turn identifies "arguable" or "debatable" with "colorable"; the latter being the word of controlling and numerous decisions. A colorable question of law is a meaningless phrase. As a modifier in legal parlance, "color" means appearance, as distinct from reality. Colorable law is certainly no more than "color of law," which "does not mean actual law." McCain v. Des Moines, 174 U. S. 175, 19 Sup. Ct. 644, 43 L. Ed. 936. Both "color" and "colorable" always connote pretense, sham, or falsity. Chicago, etc., Co. v. Allfree, 64 Iowa, 500, 20 N. W. 779; Virginia v. De Hart (C. C.) 119 Fed. 628.

In a case earlier than the Luken and Goldstein decisions the same court declared the true rule to be that, "where the party in possession sets out in his answer facts which, if true, would constitute an adverse title," a summary proceeding is not proper. In re Blum, 202 Fed. 887, 121 C. C. A. 241. This must be construed with the Goldstein ruling, supra. In re Yorkville Coal Co., 211 Fed. 621, 128 C. C. A. 570, this court held that an adverse claim was disclosed by testimony which, "if submitted in a court and no evidence offered in contradiction, would be sufficient to support a judgment in favor of the claimant." These words mean the same thing as those quoted in the opinion of the majority from In re R. & W. Skirt Co., 222 Fed. 256, 138 C. C. A. 67, where it was further and truly said that "the purpose of the act will be largely defeated if, each time a question of law arises over the title to property, an action at law or a suit in equity must be commenced."

To say that the adverse position must rest upon testimony which, if uncontradicted, would support it, and then add to that the doctrine that an arguable or debatable proposition of law is enough to put the trustee to the delay and expense of a suit, leaves summary jurisdiction resting on nothing but agreement. Nor can our prior decisions be explained away by now calling the claims merely colorable; in the Skirt Company Case the report contains no statement of what the point of law was; but it was plainly debatable, as counsel differed about it and the claimant prevailed in the lower court.

In Alco Film Corporation v. Alco Film Service, 234 Fed. 55, 148 C. C. A. 71, the report shows on its face that the question of adverse claim was specifically raised. Objection to service of the order outside the district was waived, but nothing else; and it was impossible to decide that case as it was decided without holding that a claimant who raised merely propositions of law was not entitled to require a plenary suit to test his rights.

The doctrine enunciated in the case from this court was substantially adhered to in Courtney v. Shea, 225 Fed. 358, 140 C. C. A. 382 (C. C. A. 6th), where it was held that summary proceedings should be dismissed when it appeared that the claim set up existed when petition filed, and "if supported by uncontradicted testimony would sustain a judgment in favor of the claimant." No amount of uncontradicted testimony can sustain a judgment unless the law awards it.

I do not think the District Judge misapprehended the decisions of this court; on the contrary, this judgment overrules them.