## FT. DEARBORN TRUST & SAVINGS BANK et al. v. SMALLEY et al.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1924.)

No. 242.

1. **Bankruptcy ⊂⇒288(2)—Mortgagee of property not in possession of bankrupt held an adverse claimant.**

Where the trustees in a mortgage given by a corporation were made parties defendant in a suit in a state court against the corporation for specific performance of a contract by which the corporation sold the mortgaged property to the plaintiff, which was in possession, and the trustees filed a cross-complaint for foreclosure of the mortgage, they were adverse claimants as against trustees in bankruptcy of the corporation, who were not appointed until several months after the plaintiff in the state suit had gone into possession of the property.

2. **Bankruptcy ⊂⇒288(1)—Rights of adverse claimants in possession may not be determined by summary order.**

A court of bankruptcy is without jurisdiction by summary order to determine the rights of adverse claimants in property without their consent, unless it is alleged and proved by those invoking the jurisdiction that the property was in possession of bankrupt at the time the bankruptcy proceedings were instituted.

3. **Bankruptcy ⊂⇒217(1)—Court held without right to enjoin foreclosure of mortgage in state court.**

A court of bankruptcy *held* without right to enjoin a suit in a state court for foreclosure of a valid mortgage given by bankrupt more than a year before the bankruptcy on property which had not come into possession of the bankruptcy court, especially where the mortgage security was being depleted by the operation of oil and gas wells on the property, and to preserve it a receiver had been appointed by the state court.

Petition to Revise Order of the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

In the matter of the Globe Oil Company, bankrupt; William F. Smalley and another, trustees. On petition of the Ft. Dearborn Trust & Savings Bank and another, trustees, to revise an order of the District Court. Petition sustained, and injunction order vacated.

William F. Tucker and A. J. Biddison, both of Tulsa, Okl. (William Wilhartz and Edwin M. Ashcraft, both of Chicago, Ill., William Ruger, Jr., of Evanston, Ill., and Carroll J. Lord, of Chicago, Ill., on the brief), for petitioners.

Allen McReynolds, of Carthage, Mo. (E. H. Foster, of Muskogee, Okl., on the brief), for respondents.

Before LEWIS, Circuit Judge, and SYMES and PHILLIPS, District Judges.

LEWIS, Circuit Judge. Fort Dearborn Trust & Savings Bank (hereinafter called Fort Dearborn Bank), and Frank M. Forrey, as trustees under a mortgage or deed of trust given by Globe Oil Company (called Globe Co.), filed their petition here under section 24b of the Bankruptcy Act (Comp. St. § 9608) against the trustees in bankruptcy of the Globe Co., wherein petitioners pray that an order of the Bankruptcy Court made summarily on December 5, 1922, against their ob-

jections, enjoining them from foreclosing that mortgage, be vacated and set aside because, as they allege, said order was made erroneously as matter of law. Their petition and the response of the trustees in bankruptcy thereto bring into the record here this situation and these facts:

In February, 1919, the Globe Co. gave its mortgage or deed of trust on oil leases and other oil properties which it owned in Okmulgee, Tulsa, Carter and Jefferson counties, Oklahoma, and in Caddo Parish, Louisiana, to secure payment of its negotiable bonds or promissory notes to be issued not in excess of $2,000,000. In that mortgage Fort Dearborn Bank and Forrey were named as trustees with express powers, among other things to bring foreclosure suit on default, to have the property sold and the proceeds applied on the mortgage debt. The mortgage was placed of record in those counties and parish during the month it was given. One year later and on February 17, 1920, the Globe Co. sold the mortgaged properties in Okmulgee, Tulsa and Carter counties to Skelly Oil Company (called Skelly Co.), as evidenced by written contract between them, and Skelly Co. made a down payment of $250,000 on the purchase price, the remainder to be paid when the Skelly Co. approved title to the properties. About three and a half months after the sale to Skelly Co. a petition in bankruptcy was filed against the Globe Co. and it was adjudged bankrupt on June 29, 1920. Two like petitions were filed by the same creditors in different jurisdictions, one on May 29th and one on June 3, 1920. Adjudication was on the latter. On June 2, 1920, Skelly Co. filed a suit in the State district court for Tulsa county against the Globe Co. and others, among them Fort Dearborn Bank, for specific performance of the contract of sale made on February 17th. In that suit Skelly Co. alleged that Globe Co. represented to it that only about $1,000,000 in notes issued under the mortgage were then unpaid, that it was agreed that all of the purchase price, to-wit: $900,000, except $50,000, should be paid to the Fort Dearborn Bank to be applied on the indebtedness, that $200,000 of the first payment was sent to and received by the bank for that purpose, that Globe Co. agreed to pay the balance of the mortgage debt when the deal was closed and obtain a release of the mortgage, that Skelly Co. was ready and willing to pay the balance, $650,000, when that was done, that according to the terms of the mortgage not more than $1,-400,000 in notes should be outstanding at any time, that the remaining $600,000 had been issued to the Globe Co., as it then believed, in violation of the trust, and it prayed, among other things, that the court find whether any notes had been illegally issued, and if it so found, that they be cancelled, that the court find the true and just amount due on the mortgage debt, that the balance of the purchase price which it was ready to pay be received and credited thereon, and that if that did not fully discharge the debt other property of the Globe Co., if it could be found, be first taken and applied before resorting to the property which Skelly Co. had purchased. Thereafter Fort Dearborn Bank and Forrey, as trustees under the mortgage, filed their answer and cross-complaint, in which they alleged that the principal of the promissory notes or bonds secured by the mortgage and then unpaid was $1,445,-

000, that the interest of the Globe Co. in the property in Caddo Parish, included in the mortgage, had been lost to that company, that the remainder of the property covered by the mortgage was not of sufficient value to pay off the unpaid notes, that there had been default by the mortgagor, in respects specified, and it prayed in its cross-complaint that the mortgagor's equity be foreclosed, the property ordered sold and the proceeds applied in paying the outstanding notes in accordance with the terms of the mortgage. The cross-complaint brought in the trustees in bankruptcy as parties to the cause; and thereupon they initiated the proceedings which resulted in the injunctive order here complained of. In their petition for that order, filed in the Bankruptcy Court on May 12, 1922, they alleged that the property of the bankrupt was subject to the mortgage, but they claimed that $600,000 of the outstanding notes were issued and negotiated in violation of the trust, and for the purpose of defrauding unsecured creditors, and they asserted that they desired to contest those notes in the Bankruptcy Court. They alleged that on February 17, 1920, the bankrupt undertook to dispose of substantially all of its property to Skelly Co. by a pretended contract, that the property was of the value of approximately $2,000,000 and was being sold to Skelly Co. for $900,000, payable $250,000 in cash, the balance when Skelly Co. approved title and Globe Co. executed to Skelly Co. certain leases and conveyances, that—

"said pretended contract of sale being a mere subterfuge to get the property of said bankrupt beyond the reach of its creditors and to hinder, delay and defraud said creditors. The property thus sought to be fraudulently disposed of consisted of certain producing oil and gas leases, and oil wells, which, in its nature, was not susceptible of actual manual possession, but for all practical purposes the same was in the possession of certain pipe line companies, as agents and bailees of said Globe Oil Company. Petitioners are informed and believe, and so state, that said Skelly Oil Company claims that it was in possession of said property, at the time of the filing of said petition in bankruptcy, and the adjudication of said Globe Oil Company bankrupt, but petitioners show that there was no visible change of possession, and the only evidence of possession of said Skelly Oil Company is by virtue of certain division orders which petitioners are informed were executed by said Globe Oil Company, as a part of said fraudulent scheme. And petitioners further show that said Skelly Oil Company, is not and never has been in the actual adverse possession of said properties, claiming the title thereto in good faith, and is, and has been subject to the summary orders of this Court."

They further alleged that on June 2, 1920, the day before the petition was filed on which the Globe Co. was adjudged bankrupt, Skelly Co. brought its suit in the State court for specific performance of its pretended contract of purchase, that Fort Dearborn Bank and Forrey were made defendants in that suit on the ground that $600,000 of the notes had been issued fraudulently, that Fort Dearborn Bank and Forrey by cross-complaint in Skelly Co.'s suit seek to foreclose the mortgage, which is wholly unnecessary, will entail great expense, would be a first charge on the proceeds of sale and greatly impair the equity of redemption of the creditors, and that the trustees in bankruptcy had been made parties to the cross-complaint without their consent and without leave of the Bankruptcy Court. On these allegations the petition prayed that an order issue to Fort Dearborn Bank and Forrey and their coun-

sel commanding them to show cause why they should not be enjoined from further prosecuting their cross-complaint in the State court. On May 12, 1922, a temporary order issued, staying further prosecution of the foreclosure proceedings until otherwise ordered by the Bankruptcy Court. On May 25, 1922, Fort Dearborn Band and Forrey entered their special appearance and objected to the jurisdiction of the Bankruptcy Court. The court ordered them to file their written special appearance and objections, which they did on June 3d following, wherein they set forth the proceedings in the case in the State court and exhibited therewith Skelly Co.'s complaint in that case, the answer and cross-complaint of Fort Dearborn Bank and Forrey thereto, alleged the giving of the mortgage by the Globe Co. in February, 1919, that all of the authorized $2,000,000 in notes were outstanding and unpaid except $555,000 thereof, that on February 17, 1920, the Globe Co. entered into written contract with Skelly Co. to sell to it the property covered by the mortgage,

"and the said Skelly Oil Company did thereupon pay over to the said Globe Oil Company of the consideration named in said contract the sum of Two Hundred Fifty Thousand Dollars ($250,000.00), and the said Globe Oil Company did, on or about the 25th day of February, 1920, surrender and deliver over to the said Skelly Oil Company the possession of all of the said properties described in said Trust Deed, in the State of Oklahoma, and did transfer to the said Skelly Oil Company all of the oil to be run from and after such date, and the said Skelly Oil Company did then enter into the possession of all of the said properties, and has at all times since the said date been in the open, notorious and exclusive possession thereof, claiming title thereto, and has drilled wells thereon for oil and gas, and operated said properties continuously since taking the same, and is now in such possession, claiming title,"

and denied

"that Skelly Oil Company is not in possession of the properties in question, at the time of, and at all times since, and for a long time before the filing of the petition in Bankruptcy, and denies that the pipe line companies, or any of them, are now, or ever have been, in possession thereof."

It denied that any bonds or notes had been issued under the mortgage in violation of the trust or that they had been negotiated negligently or issued fraudulently or without consideration, and alleged that Skelly Co. brought its suit in the State court for specific performance on June 2, 1920, that Fort Dearborn Bank and Forrey filed their answer and cross-complaint in that suit before adjudication in bankruptcy, that the property of the bankrupt is not of sufficient value to pay the admitted amount of the mortgage debt, that at the time the cross-complaint was filed the mortgagor was in default, that cross-complainants prayed for a receiver and the State court appointed a receiver of the properties, who had qualified as such, that Fort Dearborn Bank and Forrey requested the trustees in bankruptcy to enter their appearance in the suit in the State court, and having failed to do so that court on application made them parties and they were then brought in by summons; and thereon it claimed (1) that the Bankruptcy Court was without jurisdiction "because the property covered by the trust deed (in the nature of a mortgage) is not now, and has not at any time been in

the actual possession of the trustees in bankruptcy of the Globe Oil Company, bankrupt, the Bankruptcy Court, or any of its officers or agents, and was not, at the time of the filing of the petition in bankruptcy, and had not been for a long time prior thereto, in the actual possession of the bankrupt, nor any of its agents, servants or employés, and such property has been since long prior to the filing of said petition in bankruptcy, and is now, in the actual possession of Skelly Oil Company, who claims rights, title and interest therein adverse to the Trustees in Bankruptcy of Globe Oil Company, bankrupt," and (2) that the State court had jurisdiction of the subject matter in litigation and of the parties and possession of the property involved. On June 22, 1922, the Bankruptcy Court heard arguments on the plea to its jurisdiction, took the matter under advisement and continued the restraining order in effect. On December 5, 1922, the Bankruptcy Court, acting on the petition of the trustees in bankruptcy and the plea to its jurisdiction, without hearing any proof in support of either, overruled the plea and entered the order here complained of, enjoining Fort Dearborn Bank and Forrey from further prosecuting their cross-complaint in the State court and from making the trustees in bankruptcy parties thereto and from prosecuting any other action to foreclose the deed of trust against said trustees without consent and leave of the Bankruptcy Court.

The foregoing facts are brought here by petition to revise under Section 24b, on the claim that the Bankruptcy Court acted summarily and without jurisdiction in making the order of December 5, 1922; and the petitioners further contend that they could not of right be enjoined in the prosecution of the foreclosure proceedings even in a plenary action. The response of the trustees in bankruptcy to the petition to revise admits that the pleadings were filed and proceedings thereon were taken, as alleged. It alleges that the receiver appointed by the State court on the cross-complaint took possession of the property involved on August 22, 1922, but that his appointment by the State court was void because made subsequent to the adjudication of the Globe Co. a bankrupt and because the suit of Skelly Co. in the State court was brought after the first petition in bankruptcy was filed, when no court, except the Bankruptcy Court, had or could acquire jurisdiction over the assets of the bankrupt estate.

[1, 2] 1. In this proceeding we are not concerned with the controversy between the trustees in bankruptcy and Skelly Co. over the sale contract, further than the claim of the latter, made in apparent good faith, that it was in possession as a purchaser. It is the rights of the trustees under the mortgage which we are required to consider—whether those rights were disregarded by the injunctive order of December 5, 1922, made without right and power. We are not interested in the suit brought by Skelly Co. further than to say and hold as we do, that the cross-complaint of Fort Dearborn Bank and Forrey and the relief they sought were germane to the subject matter of that suit. It is admitted that the mortgage is a valid lien, created more than a year before bankruptcy proceedings were begun. The amount of indebtedness which it secured was questioned, but whatever it was (certainly a very large sum) the property named in the mortgage was bound for its payment.

Nothing appears which discredits the claim that Skelly Co. was at all times after February 25, 1920, in the actual and exclusive possession of the property. The trustees under the mortgage offered to establish that as a fact by proof when they were brought into the Bankruptcy Court. Fort Dearborn Bank and Forrey as trustees were then adverse claimants. First National Bank v. Title & Trust Co., 198 U. S. 289, 291, 25 Sup. Ct. 693, 49 L. Ed. 1051; In re Rathman, 183 Fed. 913, 920, 921, 106 C. C. A. 253; Stone-Ordean-Wells Co. v. Mark, 227 Fed. 975, 978, 142 C. C. A. 433. And before the Bankruptcy Court could deny them in a summary proceeding the right to apply the mortgaged property to the payment of the mortgage debt it was incumbent on the trustees in bankruptcy to establish that the bankrupt, or some one as its agent, had possession of the property at the time the petition in bankruptcy was filed, or that since then it had come into their possession or the possession of some other officer of that court. The Bankruptcy Court could not take summary action until it had been so established. This court, in Johnston v. Spencer, 195 Fed. 215, at page 219, 115 C. C. A. 167, 170, after reviewing the authorities on the right of the Bankruptcy Court to take summary action against an adverse claimant, said:

"According to these controlling decisions, the possession of property by the bankrupt at the time of the institution of the proceedings in bankruptcy is a necessary condition to jurisdiction in the District Court to determine the rights of third parties to it except when such jurisdiction is invoked by their consent. The possession may be in the bankrupt himself or by some one for him as his agent or bailee."

In addition to the authorities there relied on, see Shea v. Lewis, 206 Fed. 877, 124 C. C. A. 537; Board of Education v. Leary, 236 Fed. 521, 149 C. C. A. 573; Courtney v. Shea, 225 Fed. 358, 140 C. C. A. 382; Bank v. Hopkins, 199 Fed. 873, 118 C. C. A. 321; In re Midtown Contracting Co., 243 Fed. 56, 155 C. C. A. 586; In re Rathman, supra; Galbraith v. Vallely, 256 U. S. 46, 41 Sup. Ct. 415, 65 L. Ed. 823. The trustees in bankruptcy offered no proof to establish their claim that the property was in possession of certain pipe line companies as agents of the bankrupt at the time the petition in bankruptcy was filed. That claim on their part was alleged in their petition for the summary order with indefiniteness and with apparent doubt and uncertainty, as will be seen in the quotation from that petition set out above. Indeed, the excerpt tends to support the claim of Skelly Co. that it had possession. Fort Dearborn Bank and Forrey, in their plea to the court's summary jurisdiction, denied specifically and positively possession in the pipe line companies, and alleged actual and continuous possession in Skelly Co. as purchaser, that the bankrupt delivered to Skelly Co. all of the property about February 25, 1920, and that ever since then Skelly Co. has been in open, notorious and exclusive possession, operating the properties and claiming title thereto. Fort Dearborn Bank and Forrey offered to prove their allegations, but the order complained of shows that it was made by the court solely on a consideration of the pleadings. A fair and reasonable estimate of the undisputed facts and the respective allegations as to possession at the time the petition in bankruptcy

was filed requires, we think, a conclusion that Skelly Co. was and had been at all times, as claimed, in the actual possession of the property. However that may be, under denial of the claim of possession in the bankrupt made by the trustees in bankruptcy, it was their duty to establish that claim, and having failed to do so the court was without power to make the order of December 5th.

[3] 2. What we have said has been directed in large part to procedure rather than to the substantive rights of the parties. The latter are so fully disclosed by the pleadings in the case in the State court, by the petition and plea in the Bankruptcy Court, all brought here by reference as exhibits, and by the petition filed here and the response thereto, that we feel it our duty to give the merits attention. The default in the obligations of the mortgage is not denied. When that occurred it was the privilege and right of the mortgagor to redeem the property from the lien by paying the mortgage debt, and when it was adjudicated bankrupt and the title to its equity vested in the trustees in bankruptcy that right and privilege passed to the trustees and the creditors whom they represent. Failing in that the right to foreclose the equity was clear. The security which the mortgage gave for the payment of the debt is a wasting one, as the oil is extracted and sold. That is alleged in the cross-complaint in the State court suit, and was the reason for the appointment of a receiver by that court—that the receipts from that source might be impounded to be later applied on the debt. When Skelly Co. brought the trustees under the mortgage into the State court they were called upon and it was their duty to set forth fully their rights as trustees. This they did, and alleged the amount of the debt secured, about which, we think, on all the facts stated there is no great difference, alleged default and asked for a decree of foreclosure and sale. The mortgage being given more than four months before bankruptcy was not avoided or rendered voidable by the Act. The trustees in bankruptcy admit it is a valid lien. The property must be sold to pay the debt, and there is nothing to induce a belief that it would bring less at the foreclosure sale than at a sale made by order of the Bankruptcy Court. The trustees in bankruptcy say they want the amount of the mortgage debt ascertained and fixed by the Bankruptcy Court; but that is in issue in the foreclosure suit, the trustees have a right to be heard there on that question, and there is no reason suggested why that court cannot as well, as expeditiously and as correctly ascertain and fix that amount as any other court. In short, we find no substantial reason that causes us to believe that the rights of unsecured creditors will be better served by a sale in the bankruptcy proceedings than in the State court. On the other hand, the note-holders have contract rights secured to them by the mortgage, rights unaffected by the Bankruptcy Act or any other law, a right to have the security applied to the payment of those notes on default, and for that purpose to hold their trustees named in the mortgage to reasonable diligence in taking the necessary steps to see that the application is made. These are valuable rights, judicable in the State court, and when the cross-complaint was filed it was the duty of that court to ascertain them and enforce them; and the Bankruptcy Court could not rightfully prevent their enforce-

ment in that court, unless at that time it had within its custody and under its control the mortgaged property. Hiscock v. Varick Bank, 206 U. S. 28, 41, 27 Sup. Ct. 681, 51 L. Ed. 945; Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175; Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620; In re Rathman, supra; In re San Gabriel Sanatorium Co., 111 Fed. 892, 50 C. C. A. 56; Id., 102 Fed. 310, 42 C. C. A. 369; Duncan v. Girand (C. C. A.) 276 Fed. 554; In re Dayton Coal & Iron Co. (D. C.) 291 Fed. 390, 401; Murphy v. John Hofman Co., 211 U. S. 568, 569, 29 Sup. Ct. 154, 53 L. Ed. 327.

We think it entirely clear on the facts presented that the Bankruptcy Court at no time had custody of the property, that it was never in the possession of that court, but that Skelly Co. was at all times after February 25, 1920, in possession, until it was taken over by the State court receiver. The allegations of the trustees in bankruptcy and of the Fort Dearborn Bank and Forrey in that respect have been considered. The failure of the former to traverse the facts alleged in the plea to jurisdiction and to offer to present proof on the question of possession, should be taken as an admission sub silentio of the latter's claim on that subject, if that was in doubt. On the filing of the cross-complaint the State court obtained exclusive control of the property for purposes of foreclosure and sale. The issues required the State court to deal with the mortgaged property, to ascertain the amount of and enforce the admitted and existing lien against that property and to sell it in the exercise of its jurisdiction. No other court had theretofore obtained possession of it and no other court could lawfully interfere with it in the exercise of its powers over the subject matter in litigation. Kline v. Burke Constr. Co., 260 U. S. 226, 43 Sup. 79, 67 L. Ed. 226, 24 A. L. R. 1077; Mound City Co. v. Castleman, 187 Fed. 921, 924, 110 C. C. A. 55.

The petition to revise is sustained, the injunctive order of December 5, 1922, will be vacated, and the petition of the trustees in bankruptcy on which that order was entered will be dismissed, all costs to be adjudged against the trustees in bankruptcy.